UNITED STATES, Appellee

v

JAMES W. SPELLER, Aviation Cadet, U. S. Air Force, Appellant

8 USCMA 363, 24 CMR 173

No. 9738

Decided November 1, 1957

*Major Dwight R. Rowland* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb*.

*Major Fred C. Vowell* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis P. Murray*.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried on two specifications alleging the offense of housebreaking, in violation of Article 130, Uniform Code of Military Justice, 10 USC § 930. He was convicted and sentenced to forfeiture of $74 per month for six months but before any action was taken by the convening authority, orders were issued releasing him from active duty and transferring him to the Air Force Reserve. The original action of the convening authority approved the findings and sentence, and the record of trial was forwarded to The Judge Advocate General of the Air Force for review pursuant to Article 66 of the Code, 10 USC § 866. He referred the case to a board of review for consideration. Sometime thereafter, the first action of the convening authority was withdrawn and a substituted action taken which disapproved the findings of guilt of the offense set

364

out in the first specification. The sentence was approved and ordered into execution. However, because of accused's release from active duty, the second action was subsequently withdrawn, and the following action was recorded:

"In the foregoing case of Aviation Cadet James W. Speller, AD15518352, United States Air Force, 3525th Pilot Training Squadron, 3525th Pilot Training Group (BASE), Williams Air Force Base, Arizona, the findings of guilty of Specification 1 of the Charge is disapproved, but the accused having been released from active duty effective 9 May 1956, pursuant to paragraph 17, Special Order Number 67, Headquarters, 3525th Combat Crew Training Wing (FTR) (ATC), Williams Air Force Base, Arizona, no part of the sentence is approved."

Because of the last action taken by the convening authority, the board of review concluded that only the findings of guilty of specification 2 and the Charge were before it for review, and it affirmed those findings. Thereupon, The Judge Advocate General of the Air Force certified three questions to this Court for answer, the first of which is:

"Was the Board of Review correct in holding that the [final] action of the convening authority . . . did not constitute a disapproval of the sentence but did constitute an approval of the findings of guilty of Specification 2 of the Charge and the Charge?"

We answer the question affirmatively. Paragraph 89c of the Manual for Courts-Martial, United States, 1951, provides:

"(2) *Disapproval of sentence.*—As disapproval of the entire sentence, without mention of the findings, constitutes disapproval of all findings of guilty, the action in a case in which all the findings of guilty are to be disapproved ordinarily will not mention the findings."

In his original action, the convening authority either disagreed with the views of his staff judge advocate or overlooked his recommendation for, by affirming the sentence without mentioning the findings, he approved the findings on both specifications despite the advice of his legal adviser that on the first specification they should be disapproved. The second action was evidently corrective and for the benefit of the accused, for it disapproved the findings on the first specification although the sentence remained untouched. In the meantime, it must have been discovered that the accused had been released from active duty, and it was the change in his status which prompted the convening authority to take the final action quoted above.

From the foregoing, it is abundantly clear that, in all three instances when he took action, the reviewing officer gave consideration to the findings on both specifications. In addition, it is beyond dispute that in his first two actions he approved the sentence. Certainly in construing his language in the three action orders, it becomes certain that he did not contemplate freeing the accused. In his final action, by specifically disapproving the findings of guilty upon the first specification, by making no reference to the second specification which he had previously affirmed, and by particularly stating the reason why no part of the sentence was approved, he discloses a firm intent to affirm the findings of guilt on the one specification. Had he intended to do otherwise, it can be reasonably assumed that he would not have specifically mentioned his action on the sentence as that action would have been futile if there were no approved findings to support the court-martial's sentence. Furthermore, had he intended to undercut the sentence by disapproving all findings, he undoubtedly would have so stated and supported his statement by granting a rehearing or ordering a dismissal of the action. Finally, in view of the fact that he has powers broader than a board of review, and in view of the further fact that a majority of the Court in United States v Atkins, 8 USCMA 77, 23 CMR 301, held that a final judgment has been rendered when a board of review affirms a finding but refuses to affirm any sentence, it appears that his action is com-

365

plete and legal in every respect and not a repudiation of the findings. Such being the case, the board of review was faced with a valid finding which was subject to review. While it can be argued that the last action ordered amounts to a disapproval of the sentence, such would not affect the findings for, assuming arguendo that his action amounts to a disapproval of the sentence, the findings are not unmentioned and, therefore, not automatically disapproved under the cited Manual provision.

The second certified question concerns the important principle of the legal effect of a change of status of an accused after conviction and sentence. It poses this issue:

". . . was the Board of Review correct in holding that jurisdiction to complete appellate processes in this case was not lost by reason of the fact that the accused was released from active duty under honorable conditions prior to action by the convening authority under Article 64?"

We are convinced that United States v Sippel, 4 USCMA 50, 15 CMR 50, is dispositive of this certified ▐▇▇▇▇▇▐ question in spite of defense counsel's vigorous arguments to the contrary. That case and most of the authorities relied upon involve a change of status by expiration of the term of service. However, we will develop reasons for our conclusion that the method by which the status is changed makes no difference when we are dealing with post-trial proceedings, and the court-martial had jurisdiction over the person at the time proceedings are commenced.

In paragraph 11d, Manual for Courts-Martial, supra, the following rule is stated:

"*Effect of termination of term of service.*—Jurisdiction having attached by commencement of action with a view to trial—as by apprehension, arrest, confinement, or filing of charges—continues for all purposes of trial, sentence, and punishment. If action is initiated with a view to trial because of an offense committed by an individual prior to his official discharge—even though the term of enlistment may have expired—he may be retained in the service for trial to be held after his period of service would otherwise have expired. See Article 2(1)."

In United States v Sippel, supra, we quoted the Manual provision and then went on to say:

". . . Be that as it may, and aside from the Manual provision, the general rule has long obtained that jurisdiction once acquired is not lost by a change in the status of a defendant. The civilian rule, as stated in 14 Am Jur, Courts, § 195, at page 388, is that 'jurisdiction once attached is not lost by the removal of the defendant from the jurisdiction.' This principle has been adopted by military jurisprudence. In 1919 the Secretary of the Navy addressed an inquiry to the Attorney General as to whether court-martial proceedings could be instituted against a person who had been discharged from the naval service. In the course of his opinion the Attorney General stated (31 Op Atty Gen 521, 528):

'It appears to be well settled, as said by the Supreme Court in Carter v. McClaughry (183 US 365, 383), that where jurisdiction has once attached it can not be divested by mere subsequent change of status, and that this principle justifies the trial and sentence of a person out of the service where jurisdiction has attached while he was in the service. Coleman v. Tennessee, 97 US 509; 16 Op 349, 352; Barrett v. Hopkins, 7 Fed 312; *In re Walker, supra; In re Bird, supra;* In re Dew, 25 Law Reporter, 538, 540; United States v. Reaves, 126 Fed 127, 131; Winthrop, Military Law, p 120; Dudley, Military Law, p 34; Davis, Military Law (1913 ed) p 59.

'This well-settled rule may be claimed to require the assertion of the same jurisdiction whether prosecution has been instituted before the defendant left the service or not. To this claim, however, there

are two answers. First, the undoubted grant of jurisdiction to institute proceedings against a person in the service necessarily implied a grant of jurisdiction to carry the proceedings through to their legitimate end; second, by the institution of the proceedings the defendant acquires a new status; viz, that of a person under military charges, and this status he does not lose by the loss of his military status generally. *Carter* v. *McClaughry, ubi supra.*' "

In Carter v McClaughry, 183 US 365, 22 S Ct 181, 46 L ed 236 (1902), previously relied on by us, the Supreme Court said:

"The accused was proceeded against as an officer of the army, and jurisdiction attached in respect of him as such, which included, not only the power to hear and determine the case, but the power to execute and enforce the sentence of the law. Having been sentenced, his status was that of a military prisoner held by the authority of the United States as an offender against its laws.

"He was a military prisoner though he had ceased to be a soldier; and for offenses committed during his confinement he was liable to trial and punishment by court-martial under the rules and articles of war. Rev. Stat. § 1361.

"It may be added that the principle that where jurisdiction has attached it cannot be devested [sic] by mere subsequent change of status has been applied as justifying the trial and sentence of an enlisted man after expiration of the term of enlistment (Barrett v. Hopkins, 2 McCrary, 129, 7 Fed. 312), and the execution of sentence after the lapse of many years, and the severance of all connection with the army. Coleman v. Tennessee, 97 US 509, 24 L. ed. 1118."

Another United States Supreme Court case which is supportive of the position we take is United States v Landers, 92 US 77, 23 L ed 603. It is interesting to note that the Supreme Court in that instance was considering the effect of an honorable discharge, and its views on that method of terminating the status may be gathered from the following language:

". . . Assuming that the conduct of the soldier in this case, subsequent to his restoration to duty, may have entitled him to an honorable discharge, and that such discharge was not inadvertently granted, the discharge could not relieve him from the consequences of the judgment of the military court, and entitle him to the pay and allowances which that court had adjudged to have been forfeited. The forfeiture must first be removed, either by its remission in terms, or by the reversal of the judgment, or the pardon of the President."

In United States v Gallagher, 7 USCMA 506, 22 CMR 296, the Chief Judge said in his separate concurring opinion:

"A discharge from the military service is not an adjudication that the person discharged has not committed an offense during the period of his service. Nor does it operate as a pardon for any offense that has in fact been committed. United States v Landers, 92 US 77, 23 L ed 603."

It appears that the foregoing authorities overwhelmingly support the rule of continuing jurisdiction when the change is by operation of law, and that leaves for discussion the question of whether a different rule should be applied when an enlisted man has been released from active duty honorably. If there is any difference, a change by operation of law ought to be the more effective. However, conceptually there should be no difference unless some theory of estoppel can be applied against the Government for having acted affirmatively. But, even assuming such a doctrine should be made applicable, it would only bar proceedings subsequent to the date of discharge and not those which had been completed prior thereto. Clearly, an estoppel arising after trial cannot go so far as to antecede the operational date of the discharge and expunge findings which have been made and pardon

367

sentences which have been imposed. Accordingly, we find no good reason to hold the findings and sentence of the court-martial are impaired by the discharge. Therefore, we turn to consider its effect on acts taken subsequent to the change in status. After findings and sentence, the case enters review channels, and certainly appellate processes should be permitted to take their normal course, for to hold otherwise would subject the judicial appellate system to constant interference by military commanders. Every appeal could be interrupted by the simple expedient of issuing an administrative discharge, and the accused might be prejudiced unless an estoppel could be converted into an absolute pardon. That obviously would be a legal absurdity. Accordingly, we find no reason to hold there should be a distinction between the two methods of effecting the discharge, for in either event the status has been changed and the status determines jurisdiction.

While it is true that when a serviceman's relationship with the military service has been terminated and he reverts to his civilian status, the service to which he belonged has lost jurisdiction to initiate criminal proceedings against him, it does not follow that matters in the process of appeal must be dismissed. After the service relationship terminates, if the offender is to be tried for an offense committed prior to his return to a civilian status, he must be tried in a civilian court. That is what Toth v Quarles, 350 US 11, 100 L ed 8, 76 S Ct 1, holds and, pretermitting unusual circumstances not presently facing us, we do not believe the method by which the termination is accomplished makes one whit of difference. But that is not to say that once an accused is tried and convicted by a court-martial which had jurisdiction, his reversion to a civilian status sets aside his conviction and requires that he be given a second chance before a jury in a civilian court. On the contrary, once a prosecution starts legally in military courts, it is entitled to be completed in the manner provided by the law which governs them.

Our attention has been directed to the fact that an Air Force board of re-

view in ACM 8169, United States v Santiago, 15 CMR 781, reached a conclusion contrary to the one we announce. It concluded United States v Sippel, supra, could be distinguished from cases of this character for the following reasons:

"This rule is not in conflict with that enunciated in U. S. v. Sippel (No. 2689), 4 USCMA 50, 15 CMR 50, and ACM 7395, Westergren, 14 CMR 560. Those cases hold that court-martial jurisdiction, once acquired, is not lost by a change in the status of the defendant. In those cases, accused's status as officers in the military service terminated by operation of law on 1 April 1953 without any action on the part of the military service (Armed Forces Reserve Act of 1952, PL 476, 82nd Cong; EO 10397, promulgated 25 Sep 1952, implementing PL 450, 82nd Cong, 66 Stat 333). In the instant case, as in the cases cited in the main body of this decision, the change of status was occasioned by the affirmative administrative act of the military service, culminated by the issuance of a certificate which characterized as honorable the accused's service during the period in question. The accused's separation from active duty under honorable conditions was without qualification, limitation, or reservation on the part of the Air Force. It is conceded that jurisdiction, having properly attached, continues through all phases of the court-martial proceedings, including appellate review and execution of the sentence. However, the voluntary, affirmative action of the military authorities in separating the accused under honorable conditions as evidenced by the certificate of service is inconsistent with further proceedings to affirm the sentence. In releasing accused from active duty, the Air Force removed the accused from a status in which he could continue to draw pay and allowances and thus, by its own voluntary and affirmative act, made it impossible to carry into execution the sentence of forfeiture adjudged herein."

With due respect to the opinion of

that board, we just do not follow the reasoning. Assuming, for the sake of argument, that a sentence cannot be satisfied because of the action of military authorities, that has nothing to do with the legality of the findings or any part of the sentence which has been satisfied. At best, if the Government has taken action which can be considered as a remission of the sentence, that does not affect the findings of guilt. Sentence is severable from findings, and execution is no part of the sentence. The latter may be stayed or it may be enforced, but that decision cannot be made by the court-martial. Therefore, it just seems legally incorrect to hold that a release from active duty of a serviceman after findings and sentence, but prior to the time execution of a sentence can be effectuated, strikes from the record all that has gone before. It seems more logical to us to hold that once findings are returned and sentence imposed by a court-martial which is clothed with the power and authority to hear the charge, any action taken thereafter which merely affects the execution of the sentence does not affect the legality of the conviction. In United States v Blue, 3 USCMA 550, 13 CMR 106, we took that view, for we affirmed a finding and directed reassessment of sentence, well knowing the accused there had been returned to a civilian status.

The third certified issue requests that we answer the following question:

". . . was the Board of Review correct in holding that, although there was no sentence before it upon which it could effectively take action, it could nevertheless affirm the approved findings of guilty?"

The answer to this certified question has been partially furnished in the previous discussion. Under ■ Article 64 of the Uniform Code of Military Justice, 10 USC § 864, a convening authority is granted discretion to determine whether the findings will be approved or disapproved. Likewise, in the same Article, he may approve the sentence or such part thereof as he in his discretion determines should be approved. This is an extensive grant of power, and the Article in no way requires that the approval on the findings be conditioned on the approval of the sentence. Even though the reverse may not be true, the two are separable to the extent that the former may be approved without approval of the latter. The convening authority has greater power to deal with a sentence than has a board of review, and in United States v Atkins, supra, the Court held that a board may approve the findings without approving the sentence. In that case, the Court stated:

"In reaching our conclusion we have not overlooked the provision in Article 66(d), 10 USC § 866, that if the board of review sets aside the findings and the sentence and does not order a rehearing, it shall order that the charges be dismissed. By its express terms the provision is applicable only when both the findings and the sentence are disapproved. Since the board of review affirmed the findings, it was not bound to dismiss the charges."

Accordingly, if a board of review may affirm the findings and leave the accused unsentenced and a valid conviction remains, a fortiori the convening authority may do the same.

The certified questions having been answered, the decision of the board of review is affirmed.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

The real question in this case is whether the Air Force can affirmatively discharge a person "under ■ honorable conditions" and then turn around and give him a punitive discharge. The majority of this Court say that it can. In my opinion it cannot.

Of course, in this case the accused was not sentenced to a punitive discharge by the court-martial, but if the court-martial processes are not terminated by the formal separation of the accused from the service, then they are not ended in a case in which the accused is later tried and dishonorably dis-

369

charged. This is not idle speculation. This Court has held that mere interrogation by a law enforcement agent, without arrest and without the service of charges, operates to attach court-martial jurisdiction which will survive the accused's change in status. United States v Rubenstein, 7 USCMA 523, 22 CMR 313. Consequently, it is quite likely that a person only suspected of an offense can be honorably discharged and then, notwithstanding the discharge, be tried, convicted, and dishonorably separated from the service. In my opinion, the Supreme Court of the United States in Toth v Quarles, 350 US 11, 100 L ed 8, 76 S Ct 1 (1955) held that such action is unconstitutional.

On the post-trial review in this case, the staff judge advocate recommended disapproval of one of the two specifications of which the accused was convicted. He also noted that, in the meantime, the accused had been "discharged from the service . . . under honorable conditions" by the order of a competent authority. On May 28, 1956, the convening authority approved the sentence. However, on June 25, 1956, he withdrew his original action, substituted another in which he disapproved the findings of guilty of specification 1 and forwarded the record of trial to The Judge Advocate General of the Air Force for review pursuant to the provisions of Article 69, Uniform Code of Military Justice, 10 USC § 869. Before final action by The Judge Advocate General the convening authority "rescinded" his June action. In a new action dated October 25, 1956, he again disapproved of the findings of guilty of specification 1. But because the accused had been released from active duty he approved "no part of the sentence." Apparently this action was forwarded to The Judge Advocate General and became part of the record for the Article 69 review.

Unquestionably, once court-martial jurisdiction attaches, the expiration of the normal term of service does not prevent the normal court-martial processes being carried through to completion. United States v Sippel, 4 USCMA 50, 15 CMR 50. Cf. United States v Rubenstein, 7 USCMA 523, 22 CMR 313. Nor

is jurisdiction lost because a change of status results from the court-martial prosecution. Carter v McClaughry, 183 US 365, 46 L ed 236, 22 S Ct 181 (1902). See also Reid v Covert, 351 US 487, 100 L ed 1452, 76 S Ct 880 (1956), reversed on other grounds, 354 US 1, 1 L ed 2d 1148, 77 S Ct 1222 (1957). However, this case presents more than mere expiration of the period of service or change of status as a result of a court-martial sentence. According to the recitals in the record and the Government's concession, the accused was affirmatively released from active duty by competent authority before the convening authority took action on the case. A final separation from the service ends court-martial jurisdiction. Toth v Quarles, 350 US 11, 100 L ed 8, 76 S Ct 1 (1955). The issue then is whether the principle of continuing jurisdiction takes precedence over the principle of loss of jurisdiction by affirmative discharge. Some of the language in the Sippel opinion implies that it does, but that language was unnecessary to the disposition of the case. In fact, the opinion specifically notes that the Secretary of the Air Force had refused to issue an order of separation because he believed that such action would "abate the proceedings."

Early authorities who have considered the problem have consistently held that a final separation from the service ends the accused's amenability to military jurisdiction and abates the proceedings against him. Ops, JAG, Army, 1918, Vol. 2, page 546; United States v Iacovazzi, 60 BR 155, 168. Colonel Winthrop, in his celebrated work on military law, says:

"The legal effect of this discharge, like that of an ordinary discharge at the expiration of the term of enlistment, is to separate the soldier honorably and finally from the service under his contract. In law such discharge is 'honorable,' whatever may have been its grounds or the circumstances under which it was given. Though its subject be a deserter, an offender in arrest or on trial, or a convict under sentence of imprisonment, he leaves the service in good standing *legally*, being entitled to all

pay due and to the enjoyment of all the other rights of an honorably discharged soldier. Such discharge is also *final* in detaching the recipient absolutely from the army under the enlistment to which it relates, and, so far, from military jurisdiction and control, and, (thus far also,) remanding him to the status and capacity of a civilian. While an order for such a discharge may be recalled before it is executed, the discharge once duly delivered cannot be cancelled or revoked, except where obtained by falsehood or fraud." [Winthrop, Military Law and Precedents, 2d ed, 1920 Reprint, page 550.]

An identical opinion is expressed by Major General George B. Davis, former Judge Advocate General of the Army, in his treatise.

"The discharge of a soldier, therefore, when subject to trial and punishment for a military offense is a formal waiver and abandonment by the United States of jurisdiction over him." [Davis, A Treatise on the Military Law of the United States, 3d ed, page 58.]

As far as I have been able to determine, the view that court-martial jurisdiction survives a discharge appears to be based upon a passage in the opinion of the United States Supreme Court in Carter v McClaughry, supra. In that case, the accused was sentenced to dismissal, a fine of $500, and confinement. All parts of the sentence were to take effect concurrently. Upon execution of the dismissal, the accused contended that the fine and the confinement could not be enforced because he was no longer subject to military law. In rejecting this contention the Supreme Court said:

"The accused was proceeded against as an officer of the army, and jurisdiction attached in respect of him as such which included not only the power to hear and determine the case, but the power to execute and enforce the sentence of the law. Having been sentenced, his status was that of a military prisoner held by the authority of the United States as an offender against its laws.

"He was a military prisoner though he had ceased to be a soldier; and for offenses committed during his confinement he was liable to trial and punishment by court-martial under the rules and articles of war. Rev. Stat. § 1361.

"It may be added that the principle that where jurisdiction has attached it cannot be devested by mere subsequent change of status has been applied as justifying the trial and sentence of an enlisted man after expiration of the term of enlistment (Barrett v. Hopkins, 2 McCrary, 129, 7 Fed. 312), and the execution of sentence after the lapse of many years, and the severance of all connection with the army. *Coleman* v. *Tennessee*, 97 US 509, 24 L. ed. 1118."

The quotation from the *Carter* case is too narrow a ledge upon which to support the claim of continuing jurisdiction where there has been an actual discharge not as a result of a court-martial sentence. Both cases cited by the Supreme Court are cases in which the regular period of service had apparently expired, but no valid discharge had been issued before the completion of the court-martial proceedings. As a matter of fact, Coleman v Tennessee, 97 US 509, 24 L ed 1118 (1879), supports the view that, had a valid discharge been issued, the court-martial's sentence could not legally be executed. There, the accused had been sentenced to death. The sentence was approved. Execution was fixed for July 21, 1865. The accused, however, escaped. In 1870, he applied for, and obtained, an honorable discharge. Later, it was learned that the representations in his application for a discharge were false. The discharge was revoked. In his letter of advice to the Secretary of War on the legal effect of these proceedings, Attorney General Devens first noted that the "matter of his [the accused's] discharges from the military service does not seem to have been before the court." 16 Atty Gen 349 (1879). He then ruled that the 1870 discharge issued to the accused "must be treated as a nullity" because it had been obtained by "the grossest falsehood and perjury," and that, therefore, the War Department's revocation of the dis-

charge was proper. Plainly implied in the opinion is the idea that if the 1870 discharge had been properly executed, military jurisdiction would have terminated then and there.

Certainly, separation from the service does not constitute a pardon for an offense committed by one formerly subject to military law. United States v Gallagher, 7 USCMA 506, 22 CMR 296, opinion by Chief Judge Quinn. However, it does operate to divest the military of all control and custody over the person. It restores him unqualifiedly to the status and capacity of a civilian, and is a "formal final judgment" of his military record. United States v Kelly, 15 Wall 34 (US 1873). Under these circumstances, I conclude that jurisdiction is lost. Toth v Quarles, supra. Cf. Kahn v Anderson, 255 US 1, 65 L ed 469, 41 S Ct 224 (1920).

The validity of the discharge in this case is not questioned. Accordingly, I would answer in the negative the second certified question which asks whether the board of review was correct in holding that jurisdiction was not lost by reason of the fact that the accused was released from active duty before completion of the review of his case. See Article 44(b), Uniform Code of Military Justice, 10 USC § 844. I would set aside the decision of the board of review and the action of the convening authority on the ground that the proceedings against the accused abated upon his formal discharge from the service.

As far as the other issues are concerned, I need not set out my views at length. Suffice it to indicate some doubts I have concerning the discussion in the principal opinion. First, once the case was forwarded by the convening authority he had no power to substitute a new action, except under direction of higher appellate authority. United States v Reeves, 1 USCMA 388, 3 CMR 122; see also United States v Owen, 6 USCMA 466, 20 CMR 182. Second, assuming its validity I would interpret the October 25 action by the convening authority as one in which he positively acted on the accused's sentence. If, as seems to be implied in the principal opinion, he had not, in fact, acted on the sentence, his review would be incomplete and the record of trial would not be subject to appellate review. United States v Best, 4 USCMA 581, 16 CMR 155. The action, however, constitutes an affirmative decision on the sentence. See United States v Atkins, 8 USCMA 77, 23 CMR 301. Consequently the record was properly reviewable under the provisions of Article 69, Uniform Code of Military Justice.