UNITED STATES, Appellant

v

THOMAS D. MAZE, Second Lieutenant,
U. S. Army, Appellee

21 USCMA 260, 45 CMR 34

No. 23,108

March 24, 1972

Captain *Richard L. Menson* argued the cause for Appellant, United States. With him on the brief were *Colonel David T. Bryant* and *Lieutenant Colonel Ronald M. Holdaway*.

■■■■■■■■■

*Bernard J. Casey, Esquire,* argued the cause for Appellee, Accused. With him on the brief was *Colonel George J. McCartin, Jr.*

## Opinion of the Court

DARDEN, Chief Judge:

This case ultimately presents the question of whether a specification alleging alteration of a public record charges an offense under Article 134, Uniform Code of Military Justice, 10 USC § 934. Before reaching that question we encounter preliminary issues involving our continued jurisdiction to conduct appellate review and possible mootness.

Lieutenant Maze was the accountable officer for property issued on receipts to his company from a higher echelon. He altered 19 slips, each of which originally recorded a return of a specified amount of property to a supply depot, to make them indicate a return of a larger quantity of the same property. The effect of the alteration was to diminish the property for which he was still accountable and to conceal shortages in his account.

Appellate review of this case has been prolonged, partly because an en banc reversal of a panel decision setting aside guilty findings and authorizing a rehearing conflicted with our decision in United States v Chilcote, 20 USCMA 283, 43 CMR 123 (1971). After our decision in Maze v United States Army Court of Military Review, 20 USCMA 599, 44 CMR 29 (1971), the original decision of the Army Court of Military Review was reinstated. The Judge Advocate General of the Army certified the case for review here under the provisions of Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867(b)(2).

During the pendency of appellate review, Lieutenant Maze was released to inactive duty under a regulation[1] that provides for release of a reserve officer from active duty before completion of appellate review if the officer has been sentenced to a dismissal. Appellate defense counsel, citing

[1] Paragraph 3–71a, section XIX, Army Regulation 635–100.

United States v Goguen, 20 USCMA 527, 43 CMR 367 (1971), and Toth v Quarles, 350 US 11, 100 L Ed 8, 76 S Ct 1 (1955), suggest that, in effect, Lieutenant Maze has been separated from the service and that we are therefore without jurisdiction to continue appellate review.

In military law, jurisdiction to complete appellate review and to establish the finality of a conviction continues despite an accused's having been released from active duty, United States v Speller, 8 USCMA 363, 24 CMR 173 (1957), or his having received an administrative discharge, United States v Entner, 15 USCMA 564, 36 CMR 62 (1965). In United States v Goguen, supra, after the Government did not appeal the issuance of a writ of habeas corpus issued by a United States district court directing Goguen's discharge from the custody of the Army, we considered the import of the order to be the termination of all military authority over the accused and that when the Army released the accused from its custody, it was bound to end the court-martial proceedings against him. The instant case involves only an inactive duty status, distinguishable from a court-ordered separation, as in *Goguen,* or an administrative discharge from any military status, as in Toth v Quarles, supra. *Goguen* limited but did not overrule United States v Speller, supra, which stands for continued appellate jurisdiction in the circumstances attending this appeal.

Next is the issue of possible mootness. The en banc decision of the Court of Military Review ■■■■■■■ that the decision in *Maze,* supra, invalidated had approved a sentence limited to forfeiture of $100 a month for six months. Declaring that this sentence has either been executed or rendered nugatory by Lieutenant Maze's release to inactive

duty, appellate defense counsel urge that regardless of our disposition of the certified question, the position of the parties would be substantially unchanged, and that under United States v Aletky, 16 USCMA 536, 37 CMR 156 (1967), and cases cited in that opinion, the certified question is academic or moot. This argument assumes that if we remanded the case, the Court of Military Review could approve no sentence in excess of the one approved by the en banc Court of Military Review decision that was invalid under *Chilcote,* supra. Accepting that assumption for the resolution of this issue only, we still notice distinctions between this case and the cases cited to support the mootness argument. In *Aletky,* supra, the Court held a certified question academic when doubt existed about whether the then board of review had exercised legal or fact-finding powers and the accused had already been discharged as a result of a court-martial for another offense. The Court also declined to answer certified questions in United States v Gilley, 14 USCMA 226, 34 CMR 6 (1963), when it appeared that dismissed specifications that were in issue had had no impact on the sentence as adjudged and approved. In United States v Goldman, 21 USCMA 22, 44 CMR 76 (1971), the Court remanded a case in which the sentence could not have been changed and the only possible consequence was an overturning of one of the findings. As the case before us now stands, Lieutenant Maze's conviction is not final. When our decision would determine the existence of a conviction, this is enough to keep consideration from being moot, without regard to the question of his possible recovery of any forfeitures that may have been exacted. Cf. United States v McIvor, 21 USCMA 156, 44 CMR 210 (1972).

Appellate defense counsel press upon us other arguments supporting an end to this case. One ▆▆▆▆▆▆■ of these is that Lieutenant Maze has suffered so disproportionately to his culpability that additional prolongation of the litigation is unjustifiable. They assert that

when Lieutenant Maze assumed responsibility for more than $2 million worth of Government property, he had only a day and a half, because of the imminent departure of his predecessor, to conduct an inventory normally requiring seven to nine days. He accepted the word of a fellow officer that all the property was accounted for, according to appellate defense, and they urge that his alterations resulted from pressure within his command to keep losses of property below the level that would cause an investigation by a higher command. If we were functioning as fact finders or as sentence determiners, these considerations might be even more attractive, but our deciding questions other than legal ones would be an expansion of the role given to us.

We now reach the core issue. Appellee's position on the certified question is that the offense ▆▆▆▆▆▆■ for which he was convicted could be properly charged only as a form of forgery under Article 123 or under the third part of Article 134 (as an offense against the United States defined by nonmilitary law), Uniform Code of Military Justice, 10 USC §§ 923 and 934.

On the point that the forgery article preempts this prosecution as an Article 134 offense, defense counsel comment that the specifications allege all elements of forgery except an intent to defraud. When legislative history convinced this Court that Congress intended for one punitive article of the Code to cover the type of conduct concerned in a comprehensive and preclusive way, the Court would not sustain a conviction of a specification under Article 134 that eliminated one or more elements of the offense defined by the specific article concerned. United States v Norris, 2 USCMA 236, 8 CMR 36 (1953). But, under *Norris,* more must be shown than that the offense alleged under Article 134 includes all but one element of an offense under another article. The additional showing needed to impose a

262

limitation on the scope of the first and second parts of Article 134 is a legislative intent to cover a class of offenses in a complete way. United States v Taylor, 17 USCMA 595, 38 CMR 393 (1968). In the absence of any indication that Congress intended for false writings or entries by members of the armed forces to be prosecuted only under Article 123, we are unpersuaded by the argument that this was an Article 123 offense but without the necessary allegation of intent to defraud. The allegation that the alteration was unlawful fairly connotes that the alteration was made without authority, thus eliminating the possibility that the alteration concerned was the type a person with custody of supplies might innocently make. An alteration of this kind is enough to make the offense one that is independent of and different from forgery.

The wording of each of the 19 specifications concerned is in this form:

"... In that ... did ... at ... on or about ..., willfully and unlawfully alter a public record, to wit: Department of Army Form 2765-1, ... by changing items 'N' and 'T' of said record from ... to. ..."

This specification contains no express reference to any offense defined by Title 18, United States Code.

This case is not one involving a decision on whether a specification alleging violation of a designated Federal statute may, if the evidence fails to prove every element of the nonmilitary statute, nonetheless support a conviction under part one or part two of Article 134. Whether the decision in United States v Long, 2 USCMA 60, 6 CMR 60 (1952), was modified if not overruled by United States v Rowe, 13 USCMA 302, 32 CMR 302 (1962), is not essential for the determination of this case. Cf. United States v Argel C. Smith, 21 USCMA 264, 44 CMR 38 (1972).

Appellate defense counsel assert that Lieutenant Maze's actions may not be affirmed as an offense against the good order and discipline part of Article 134 despite the general rule that even if an act may be charged as a "crime or offense not capital," the act may also be charged under other parts of Article 134. See United States v Herndon, 1 USCMA 461, 4 CMR 53 (1952). This line of attack on the specifications posits that at the time these charges were preferred the existence of a model specification[2] patterned closely on an offense defined by Title 18 operates to preclude the drafting of a specification alleging acts the court could find to be prejudicial to good order and discipline.

Under the terms of Article 134, a wide variety of conduct can be alleged and found to constitute an offense. The kind of conduct that is service-discrediting or prejudicial to good order and discipline is subject, however, to limitations other than the imagination of the drafter. Specifications alleging service-discrediting conduct or conduct prejudicial to good order and discipline must include allegations of criminality. United States v Wilson, 13 USCMA 670, 674, 33 CMR 202 (1963). The military judge must charge the military jury that they must find the alleged conduct to have been, in the circumstances, service-discrediting or prejudicial to good order and discipline. United States v Williams, 8 USCMA 325, 24 CMR 135 (1957). Appellate courts in the military system reverse convictions under Article

---

[2] At the time Lieutenant Maze altered the turn-in slips the Manual for Courts-Martial, United States, 1951, was in effect. The Table of Maximum Punishments in the 1951 Manual listed a punishment for altering a record, but that Manual did not include a model specification for this offense. The 1969 Manual does include an altering specification. The panel decision of the Court of Military Review in this case indicates that the inclusion of the altering specification in the 1969 Manual resulted from a perpetuation of an unexplained inclusion of a punishment for altering public records in the 1951 Manual.

134 if, as a matter of law, the conduct charged is not wrongful in a military sense. United States v Wilson, supra; see United States v Herndon, supra.

Nothing appearing in the panel decision or cited by appellate defense counsel satisfies us of a congressional purpose to exclude, from Article 134, prosecution for altering military forms in a manner to deceive supply authorities. This Court's opinion in United States v Spain, 17 USCMA 347, 348, 38 CMR 145 (1968), contained *dicta* that the:

". . . [W]illful and wrongful concealment of public records, in violation of Code, supra, Article 134, 'had its genesis in the United States Criminal Code,' and that the crimes thus denounced by both Codes are substantially identical."

This statement does not indicate acceptance of preemption in that context. *Spain* involved separate specifications alleging both alteration and concealment of records. The thrust of that decision was toward sufficient corroboration of confessions instead of whether altering a record may be a military offense under Article 134.

In this case, we encounter no argument that the acts concerned were not prejudicial to good order and discipline. The military judge charged the members of the court with the necessity for their determining that in the circumstances the acts charged were prejudicial to good order and discipline. The specifications alleged that Lieutenant Maze's conduct was willful and unlawful. We cannot find that the court's verdict was erroneous as a matter of law. It follows that the panel decision by the Army Court of Military Review in this instance was erroneous, and we reverse it.

The certified question is answered in the negative. Accordingly, the record of trial is returned to the Judge Advocate General of the Army for action consistent with this opinion.

Judges QUINN and DUNCAN concur.