# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, SALUSSOLIA, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Captain ELMO E. VANCE**
**United States Army, Appellant**

ARMY 20180011

Headquarters, U.S. Army Fires Center of Excellence and Fort Sill
Robert L. Shuck and Jacob D. Bashore, Military Judges
Colonel Maureen A. Kohn, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Jonathan F. Potter, Esquire; Lieutenant Colonel Christopher D. Carrier, JA (on brief); Lieutenant Colonel Tiffany D. Pond, JA; Lieutenant Colonel Christopher D. Carrier, JA (on reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Captain Lauryn D. Carr, JA (on brief).

8 April 2020

------------------------------------------------------------------
MEMORANDUM OPINION ON FURTHER REVIEW
------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and as such, does not serve as precedent.*

SALUSSOLIA, Judge

A military judge sitting as a general court-martial, convicted appellant, consistent with his pleas, of ten specifications of violating a general regulation, one specification of absence without leave, and one specification of conduct unbecoming an officer and gentleman, in violation of Articles 92, 86, and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 886, 933 (2012 & Supp. II 2015) [UCMJ]. The military judge sentenced appellant to a dismissal from the service and forfeiture of $1000 per month for three months.

The general court-martial convening authority (GCMCA) originally set aside the findings of guilty and the sentence pursuant to the direction of the Deputy Assistant Secretary of the Army (Review Boards), (the "DASA"). Previously, in *In Re Vance*, this court determined the GCMCA's action violated Article 60, UCMJ, and such action "was invalid at the time it was signed and void *ab initio*." 78 M.J.

631, 636 (Army Ct. Crim. App. 2018). We also issued a writ of mandamus directing the GCMCA to take action in this case in the manner as required under Article 60, UCMJ. *Id.* The GCMCA subsequently took action approving the adjudged findings and sentence in this case.

Appellant's case is now pending review before this court pursuant to Article 66, UCMJ. On appeal, appellant asserts two assignments of error: (1) whether appellant received effective assistance of counsel when he was advised that his pending resignation for the good of the service (RFGOS) in lieu of court-martial could still be approved even if he pleaded guilty and was sentenced to a dismissal; and (2) whether appellant's pleas of guilty were not provident. Appellant asserts that given either error, this court should set aside the findings and sentence. Having ordered and received affidavits from appellant's military defense counsel,[1] we address each assigned error below. In the end, we affirm the findings of guilty but set aside the sentence.

## BACKGROUND

On 26 September 2017, the government preferred charges against appellant. On 10 October 2017, appellant, pursuant to advice from his trial defense counsel, CPT LA, submitted a Resignation for the Good of the Service (RFGOS) pursuant to Army Reg. 600-8-24, Personnel-General: Officer Transfers and Discharges, para. 3-13 (12 Apr. 2008; Rapid Action Revision 13 Sept. 2011) [AR 600-8-24]. Although appellant requested the GCMCA hold the referral of his charges in abeyance until action was taken on his RFGOS, the GCMCA referred the charges on 13 October 2017. Approximately a week later, the GCMCA recommended disapproval of appellant's RFGOS in lieu of court-martial.

With a trial set for 30 January 2018, appellant submitted an offer to plead guilty on 17 November 2017, which the GCMCA accepted on 22 December 2017. On 17 January 2018, appellant was found guilty pursuant to his pleas and sentenced. On 19 January 2018, appellant's command forwarded appellant's RFGOS to the United States Army Human Resources Command, which in turn, forwarded the case to the Army Review Boards Agency for action by the DASA, operating under a delegation of authority from the Secretary of the Army (the Secretary). On 20 March 2018, the DASA accepted appellant's resignation and directed that he be administratively discharged with an under Other Than Honorable Conditions (OTH) characterization of service. The DASA also directed that "the entire court-martial proceedings, both the findings and sentence, if any, be vacated."

On 29 March 2018, after receiving advice from his staff judge advocate, the GCMCA disapproved the findings and sentence pursuant to the DASA's direction.

---

[1] The appellant was represented by MAJ RM and CPT LA, both of whom were assigned to the U.S. Army Trial Defense Service.

On 10 April 2018, appellant received orders directing the issuance of his administrative discharge and received a DD 214 that characterized appellant's discharge as under OTH conditions.

This court issued its opinion in *In Re Vance* on 5 November 2018. Subsequently, the DASA, in an undated memorandum, rescinded her prior approval of appellant's RFGOS. Her memorandum reasoned, "I have now been informed that my action was in contravention of Article 60, Uniform Code of Military Justice, which has recently been amended to limit my authority to act on Resignations for the Good of the Service in lieu of General Court-Martial after trial." On 25 February 2019, the Army revoked the order that served to discharge appellant and later, revoked his DD 214. On 22 March 2019, pursuant to this court's directive to take action in accordance with Article 60, UCMJ, the GCMCA approved appellant's findings and sentence.

## LAW AND DISCUSSION

### *Effective Assistance of Counsel*

Appellant asserts his military defense counsel were ineffective in their: (1) failure to seek a continuance to delay appellant's guilty plea until after secretarial action on his resignation occurred, and 2) deficient legal advice precluding appellant from deciding what risks to incur when deciding to enter a plea of guilty. For the reasons stated below, we find no ineffective assistance of counsel.

We review assertions of ineffective assistance of counsel de novo. *United States v. Gooch,* 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza,* 67 M.J. 470, 474 (C.A.A.F. 2009)). In *Strickland v. Washington,* the Supreme Court established a two-pronged test to determine whether counsel provided ineffective assistance. 466 U.S. 668, 687 (1984). Our superior court has adopted this two-pronged test. *United States v. Green,* 68 M.J. 360 (C.A.A.F. 2010). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient and (2) that this deficiency resulted in prejudice." *Id.* (citing *Strickland,* 466 U.S. at 687). When it is apparent that the alleged deficiency has not caused prejudice, it is not necessary to decide the issue of deficient performance. *See Loving v. United States,* 68 M.J. 1, 2 (C.A.A.F. 2009).

Appellant first asserts that his military defense counsel were ineffective for failing to request a continuance. He contends that the military judge "should" have granted a continuance had counsel merely articulated to the military judge that once findings and sentence had been adjudged, the DASA would no longer have the

authority to accept appellant's RFGOS.[2] Appellant argues that had his counsel appreciated and articulated this consequence as the basis for a continuance, he could have delayed the court-martial until the Secretary's designee took action. Appellant indicates that the period of delay would have only been two months—the time from the date of trial, 17 January 2018, until secretarial action approved the RFGOS on 20 March 2018.

We reject appellant's claim because he has not carried "his burden to show that his counsel would have been successful if he had filed . . . [a] timely motion" for a continuance. *United States v. Jameson*, 65 M.J. 160, 164 (C.A.A.F. 2007). "The tender of a RFGOS does not preclude or suspend [court-martial] procedures." AR 600-8-24, para. 3-12. Additionally, the DASA had complete discretion to act on the RFGOS, to include when to act.[3] Lastly, the entire chain of command recommended denial of appellant's RFGOS. Even appellant acknowledges this latter fact and admits that he believed the RFGOS would be denied based on his command's recommendations. Given that a motion for a continuance filed by appellant at the time of trial would have sought an indefinite delay on a discretionary collateral matter, we find it unlikely that the military judge would have granted the motion and ordered a continuance. *See Jameson*, 65 M.J. at 163-64 (citing *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001)); *see also United States v. Wiest*, 59 M.J. 276, 279 (C.A.A.F. 2004) (listing factors relevant for a continuance); Rule for Court-Martial [R.C.M.] 906(b)(1).

We next address appellant's argument that his counsels' deficient legal advice precluded appellant from deciding what risks to incur in deciding when to plead guilty. In the guilty plea context, the prejudice prong of the *Strickland* test asks whether "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *United States v. Rose*, 71 M.J. 138, 144 (C.A.A.F. 2012) (quoting *Hill v. Lockhart*,

---

[2] Appellant cites to our decision in *In Re Vance*. To clarify *In Re Vance*, we determined that in appellant's case, the CA lacked the authority under Article 60, UCMJ, "to dismiss or set aside a finding of guilty or disapprove, commute, suspend, certain parts of the sentence." *Id.* at 634. We did not address whether the DASA had the authority to accept a RFGOS post-trial, because any resolution of that issue would have been nothing more than an advisory opinion at that juncture, and this court should "adhere to the prohibition on advisory opinions as a prudential matter." *United States v. Chisholm*, 59 M.J. 151, 152 (C.A.A.F. 2003). In fact, we noted that nothing in that opinion "should be construed as limiting the Secretary's authority to act under Article 74, UCMJ, or any other authority." *In Re Vance*, 78 M.J. at 635, n.12.

[3] While the command must expeditiously process a RFGOS, we do not find a set time upon which the Secretary's designee must act on a tendered resignation. *See* AR 600-8-24, para. 3-13e; AR 27-10, para. 5-26c.

474 U.S. 52, 59 (1985)). A mere post-trial allegation is insufficient. *See United States v. Bradley*, 71 M.J. 13, 17 (C.A.A.F. 2012) (citing *Padilla v. Kentucky*, 559 U.S. 356, (2010) (the court finding appellant's affidavit alleging he would not have pleaded guilty was insufficient to demonstrate prejudice, and finding "Appellant also must satisfy a separate, objective inquiry -- he must show that if he had been advised properly, then it would have been rational for him not to plead guilty.")

Appellant fails to demonstrate a reasonable probability that, absent the alleged error, he would not have pleaded guilty. Appellant had two choices: to enter a plea of guilty or to enter a plea of not guilty. Appellant did the former and his affidavit makes no mention that he would have done the latter. Rather appellant's affidavit states: "I would not have pleaded guilty if I had known that the plea would make it impossible for the resignation, if approved to take effect. I would have waited for a final answer." His claim that he "would have waited for a final answer" clearly refers to waiting for secretarial action on his RFGOS. By making such a statement, appellant assumes that waiting for a final answer was a viable option. It was not. Nothing in the record before us shows that waiting was one of appellant's options. There is no statutory nor regulatory authority requiring the DASA to take action on appellant's RFGOS within a certain period. Moreover, the granting of an indefinite continuance on such a collateral matter was unlikely.

Appellant also makes no showing that it would have been objectively rational for him to plead not guilty. The government had a strong case, to include documentary evidence demonstrating appellant's wrongdoing, as well as numerous admissions by appellant. In the face of these facts, appellant entered into a pretrial agreement with the CA, which limited any period of adjudged confinement to sixty days and deferred adjudged or automatic forfeitures until action. Appellant received no confinement, but benefitted from the deferral of the adjudged forfeiture of $1000 per month from the date of his sentence, 17 January 2018, until the CA's initial, but flawed, action on 29 March 2018. Had appellant not agreed to plead guilty and proceed to trial in January 2018, he may not have received such favorable terms in a pretrial agreement.

*The Military Judge's Acceptance of the Guilty Plea*

In appellant's second assignment of error, appellant asserts the military judge erred by accepting appellant's plea because he failed to discuss with appellant the consequence that the findings and sentence, once adjudged, would have had on the DASA's authority to accept appellant's RFGOS in lieu of court-martial.

We review a military judge's acceptance of a guilty plea for an abuse of discretion and questions of law arising from the plea de novo. *United States v. Murphy*, 74 M.J. 302, 305 (C.A.A.F. 2015) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). An abuse of discretion occurs when a military

judge fails to obtain from an accused an adequate factual basis to support the plea or has an erroneous view of the law. *Id.* A military judge's duties with respect to plea inquiries include: (1) ensuring there is a basis in law and fact to support the plea and offense charged; (2) ensuring the accused understands and accepts the terms of the pretrial agreement; and (3) ensuring the terms of the agreement comply with the law and fundamental notions of fairness. *United States v. Soto*, 69 M.J. 304, 306-07 (C.A.A.F. 2011). We will not disturb a guilty plea unless appellant demonstrates a substantial basis in law or fact for questioning the plea. *Inabinette*, 66 M.J. at 305.

A guilty plea can be knowing and voluntary even "if the defendant did not correctly assess every relevant factor entering into his decision," *Brady v. United States*, 397 U.S. 742, 757 (1970), so long as it is "entered by [a defendant] fully aware of the direct consequences" of his plea. *Id.* at 755 (internal quotations omitted). Generally, a court must only advise the defendant of the direct consequences of his plea and need not advise him of all possible collateral consequences. *See United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011).

In part, appellant asserts we "could find" that his plea was not provident, applying the decision in *United States v. Riley*, 72 M.J. 115 (C.A.A.F. 2013). In *Riley*, the Court of Appeals for the Armed Forces (CAAF) stated that sex offender registration is not merely a collateral consequence of a guilty plea. 72 M.J. at 122. In arriving at this conclusion, the CAAF acknowledged that the consequence of sex offender registration, like deportation, is an automatic result, which while not a criminal sanction, is a particularly severe penalty. The CAAF went on to explain "it is the military judge who bears the ultimate burden of ensuring that the accused's guilty plea is knowing and voluntary." *Id.* The court found "that the military judge abused his discretion when he accepted [the appellant]'s guilty plea without questioning defense counsel to ensure [the appellant]'s knowledge of the sex offender registration consequences of her guilty plea." *Id.* Sex offender registration is now recognized as a direct consequence of a guilty plea, imposing upon the military judge the requirement to advise on the matter prior to acceptance of the plea.

We decline appellant's invitation to treat any action on appellant's RFGOS in the same fashion as the requirement to register as a sex offender. Military appellate courts have long recognized that administrative discharges, to include those resulting from a discharge in lieu of a court-martial, are collateral administrative matters. See *United States v. Bedania*, 12 M.J. 373, 376 (C.M.A. 1982); *United States v. Johnson*, 76 M.J. 673, 686 (A.F. Ct. Crim. App. 2017). Appellant offers nothing to convince us to depart from this long-standing acknowledgment and treat a RFGOS—a purely discretionary administrative matter—in the same manner as a post-conviction requirement to register as a sex offender.

To the extent appellant asserts the military judge was still required to address any post-trial action on his RFGOS, though it constitutes a collateral administrative matter, we find such an assertion meritless. When challenging a guilty plea because of an unforeseen collateral consequence, appellant must demonstrate that the collateral consequence is major, and that "appellant's misunderstanding of the consequences (a) results foreseeably and almost inexorably from the language of a pretrial agreement; (b) is induced by the trial judge's comments during the providence inquiry; or (c) is made readily apparent to the judge, who nonetheless fails to correct that misunderstanding." *United States v. Bedania*, 12 M.J. 373, 376 (C.M.A. 1982). In the case at hand, appellant makes no showing that one of these conditions has been met. Additionally, we find nothing in the record to support such a conclusion.

First, appellant clearly understood and accepted the terms of his pretrial agreement. Second, the pretrial agreement was not conditioned upon nor did it otherwise reference appellant's RFGOS. As such, any claimed misunderstanding by appellant regarding this alleged consequence did not result inexorably from his pretrial agreement. We find nothing in the record demonstrating any misunderstanding of a collateral consequence was made readily apparent to the military judge. Accordingly, having reviewed the entire record we find the appellant completed a knowing, voluntary, and intelligent plea of guilty to the charged offense, including a proper inquiry pursuant to *United States v. Care*, 40 C.M.R. 247 (1969).

*United States v. Woods*

This court may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as we find correct in law and fact and determine, on the basis of the entire record, should be approved. Article 66(c), UCMJ. Although not addressed by the parties, this court next addresses the applicability of our superior court's decision in *United States v. Woods*, 26 M.J. 372 (C.M.A. 1998). In that case, Captain (CPT) Woods was charged with drunk and reckless driving and involuntary manslaughter, in violation of Articles 111 and 119, UCMJ. Pursuant to his pleas, CPT Woods was found guilty, and sentenced to confinement for seven months and a dismissal. Prior to his guilty plea, however, CPT Woods submitted a RFGOS in lieu of court-martial in accordance with applicable regulations.[4] For some unknown reason, his tendered resignation was not forwarded to the Secretary's designee until almost three months after it was tendered and nearly two months after the CA took final action approving the findings of guilty and sentence. *Id.* at 373. The CA recommended denial of the RFGOS on the same day he approved the findings and sentence. After initial action by the CA, the Secretary's designee

---

[4] In *Woods*, the service member submitted his RFGOS in accordance with Army Reg. 635-120, Personnel Separations: Officer Resignations and Discharges, para. 5-1, 5-2 (8 Apr. 1968)(C.16, 1 Aug. 1982) [AR 635-120].

accepted CPT Woods' RFGOS and administratively discharged him with a discharge characterized as under OTH conditions. *Id.*

We take judicial notice of the record of trial in *Woods* and note the following: (1) the Secretary's memorandum accepting the service member's RFGOS was silent as to its effect on the court-martial proceedings; and (2) the Secretary's designee submitted an affidavit indicating that his acceptance of the resignation was done with the intent to abate all court-martial proceedings. *Id.* at Supplement to Appellant's Pet., App. C, D.

On appeal, this court seemingly treated CPT Wood's RFGOS as a request for clemency under Articles 71 and 74, UCMJ, and concluded that while the Secretary had the power to grant clemency pursuant to these articles of the UCMJ, and discharge CPT Wood's administratively, such action did not abate the court-martial proceedings. Accordingly, we approved the findings, in part, but declined to affirm the adjudged dismissal. *Id.* at 373. Our superior court reversed our decision in *Woods*, concluding the case should be abated. *Id.* at 375.

First, our superior court recognized the Secretary's authority to grant clemency pursuant to Article 71 and 74 of the UCMJ was distinct from his statutory power to approve a resignation in lieu of a court-martial. The court determined that the exercise of this latter statutory power pursuant to promulgated regulatory procedures permitted an agreement between CPT Woods and the Secretary's designee "which provides for some action other than a court-martial be taken with respect to criminal charges." *Id.* at 373-74. Our superior court found this court erred by not enforcing the agreement. *Id.* at 374.

Our superior court clarified that the power of the Secretary or his designee to act on resignations and the power of a CA to convene courts-martial "harmoniously coexist." *Id.* at 375. The court also determined that an administrative action cannot divest a court-martial of its judicial power, and "a court-martial can neither deprive the Secretary of his powers nor defeat a lawful agreement between an accused and the Secretary." *Id.* The court reasoned that the secretarial authority to approve the RFGOS in lieu of a court-martial should not depend upon a race between the Secretary's acceptance of the resignation and the CA's action in accordance with Article 60, UCMJ. *Id.* at 374.

In light of these considerations, our superior court concluded that the agreement between CPT Woods and the Secretary's designee, which resulted in appellant's administrative discharge from the Army, required abatement of the criminal proceedings, a set aside of the court-martial's findings and sentence, and a dismissal of the underlying charges and specifications with prejudice. *Id.* at 374-75.

We distinguish appellant's case from *Woods*. Here, as in *Woods*, the Secretary's designee approved appellant's resignation post-trial pursuant to her statutorily vested authority, and appellant was separated from the service with an administrative discharge. *See generally* 10 U.S.C. §§ 1181, 7013, and 14902. The distinction between these cases lies in what the CA could or should have done.

Had the Secretary accepted the resignation in *Woods* prior to action, the CA would have been compelled by the regulatory scheme in AR 635-120 to disapprove the findings and sentence in order to effectuate the Secretary's designee's decision. The regulatory scheme allowed for a rush to action, which, if taken before a decision on a RFGOS, could thwart the Secretary's designee's statutory authority to discharge an officer and abate the proceedings. Unlike in *Woods*, the CA here had no discretion over the findings and sentence in appellant's case. Here, the CA attempted to effectuate the DASA's wishes by initially setting aside the findings and sentence; it was a statutory change to Article 60, UCMJ, that rendered the CA's initial action invalid.

As we previously noted, amendments to Article 60 upset a regulatory scheme that previously allowed the Secretary's designee, by virtue of his or her decision, to approve a RFGOS, direct the CA to disapprove the findings and sentence of a court-martial once reached, and to abate the proceedings, with prejudice. *See In Re Vance*, 78 M.J. at 633-34; Army Reg. 27-10, Legal Services, Military Justice, para. 5-18 *b.* (11 May 2016). As applied to this case, Article 60 required the CA to approve the findings and sentence, prohibiting the CA from acting in accordance with Army Reg. 27-10 to disapprove the findings and sentence to effectuate appellant's approved RFGOS. Consequently, this court found the GCMCA's action in disapproving both findings and sentence to be void *ab initio*. *Id.* at 636. Based on this court's directive, the GCMCA approved the findings and sentence. We find that action is correct in law and we affirm the findings of guilty.

*What About the Sentence?*

What we did not address in *In Re Vance* was the effect of appellant's administrative discharge resulting from the DASA's approval of his RFGOS. In our view, appellant was administratively discharged, and later efforts to recall appellant to active duty had no legal effect.

As our superior court noted in *Woods*, the RFGOS process involved two separate but coexistent authorities: the authority of the CA under Article 60, UCMJ; and the Secretary's statutory authority under 10 U.S.C. § 3012 to promulgate regulations allowing for an officer to resign in lieu of court-martial. 26 M.J. at 374-75. The amendment to Article 60, UCMJ, impacted one part of this scheme—the ability of the CA to comply with a directive from the Secretary's designee to vacate the findings and sentence. The amendment did not invalidate the Secretary's

statutory authority to promulgate and act under regulations concerning military personnel, to include acceptance of an officer's resignation. *See generally* 10 U.S.C. § 7013.

The RFGOS process, as it existed, consisted of two parts, one involving a purely administrative act of effectuating the officer's discharge, and one of vacating the findings and sentence. *See* AR 600-8-24, para. 3-13; AR 27-10, para. 5-18b. Although Article 60, UCMJ, prevents a CA, in most cases, from vacating the findings and sentence upon the DASA's acceptance of a RFGOS, it does not divest the DASA of the authority to effectuate the administrative discharge.

Once charges are preferred, an administrative discharge certificate is "void until the charge is dismissed, the Soldier is acquitted at trial by court-martial, or appellate review of a conviction is complete." Army Reg. 27-10, para. 5-16b. However, the Secretary or "delegate," may approve an exception at the request of the soldier. Here, we have such a request in the form of the RFGOS. And we have action by the DASA (the Secretary's delegate) directing Army Human Resources Command to discharge appellant. *See* Army Reg. 600-8-24, para. 3-13h. The DASA's decision resulted in the promulgation of orders that administratively separated appellant from the service on 10 April 2018. Pursuant to the DASA's decision, appellant received orders directing his discharge, cleared the installation, and received final pay and accounting and a DD 214.

Our superior court has "identified three criteria to consider when determining whether a servicemember's discharge has been finalized for jurisdictional purposes: (1) the delivery of a discharge certificate (a DD Form 214); (2) a 'final accounting of pay'; and (3) the completion of the 'clearing' process that is required under service regulations." *United States v. Christensen*, 78 M.J. 1, 4 (C.A.A.F. 2018) (quoting *United States v. Hart*, 66 M.J. 273, 276-79 (C.A.A.F. 2008)). Under this rubric, appellant was, by any definition, discharged.[5] Nothing in the appellate record suggests rescission of the DASA's approval of the RFGOS would invalidate appellant's administrative discharge. Appellant's discharge was obtained by following a validly promulgated Army regulation, without fraud or deceit by appellant.

Assuming appellant was discharged from the Army and not validly recalled to active duty, we nonetheless have jurisdiction to review the findings and sentence in

---

[5] On 31 January 2020, we issued an order directing the government to, *inter alia*, provide the legal authority relied upon by the DASA in rescinding her acceptance of the RFGOS almost a year after it was accepted. While the government provided the documents purporting to rescind the RFGOS, cancel appellant's DD214, and place appellant on appellate leave, the government did not provide the legal authority relied upon by the DASA in rescinding her acceptance of the RFGOS and triggering the actions that purportedly restored appellant to active duty.

his case. *United States v. McPherson*, 68 M.J. 526, 530-31 (Army Ct. Crim. App. 2009) (citing *Steele v. Van Riper*, 50 M.J. 89, 91 (C.A.A.F. 1997). *See also United States v. Woods*, 26 M.J. 372, 373 (citing *United States v. Speller*, 24 C.M.R. 173, 179 (discharge only affects execution of the sentence; specifically, unexecuted portion of the sentence).

On the record before us we have: 1) a valid court-martial conviction; 2) a valid administrative discharge issued by proper authority; and 3) documentation purporting to rescind an otherwise valid administrative discharge unsupported by any law or authority. We are compelled to set aside appellant's dismissal.[6]

## CONCLUSION

For the foregoing reasons, we find appellant's counsel were not ineffective and his pleas were not improvident. The findings are hereby AFFIRMED. The sentence is SET ASIDE. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision are ordered restored.

Senior Judge ALDYKIEWICZ and Judge WALKER concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court

---

[6] Appellant's approved sentence included forfeiture of $1000 per month for three months. As the CA initially vacated this punishment and appellant was supposedly reinstated on appellate leave before the CA's second action, there were no pay and allowances against which to execute this part of the sentence.