UNITED STATES, Appellee

v

GERALD J. DOHERTY, Private E–1, U. S. Army, Appellant

10 USCMA 453, 28 CMR 19

No. 12,725

Decided June 12, 1959

*First Lieutenant Richard P. Nee* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel W. H. Blackmarr* and *Major Edward Fenig.*

*First Lieutenant Jay D. Fischer* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy, First Lieutenant George J. Miller,* and *First Lieutenant Wade H. Sides, Jr.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The question presented is whether the court-martial had jurisdiction to try the accused.

On his plea of guilty, a general court-martial at Fort Eustis, Virginia, convicted the accused of escape from confinement, in violation of Article 95, Uniform Code of Military Justice, 10 USC § 895. After receiving evidence of two

previous convictions, the court sentenced the accused to a dishonorable discharge and forfeiture of all pay and allowances. The trial took place on February 11, 1958. On February 12 the accused completed and signed a form which indicated he did not desire to be represented by appellate counsel before the board of review. On February 27, the convening authority approved the findings and the sentence but suspended execution until completion of appellate review. On March 12, the board of review affirmed the action taken by the convening authority. Thereafter, the accused petitioned this Court for grant of review on the ground that he was not subject to court-martial jurisdiction at the time of the trial.

At oral argument before this Court, counsel for the Government and the accused advised us the accused had been given an administrative discharge. Pursuant to our request, they made further inquiry and later we were informed the accused had actually been given a dishonorable discharge. A copy of the discharge was filed with us. Apparently it was issued in accordance with a form entitled "REQUEST FOR FINAL ACTION" which was filed by the accused on March 18.

The form recites that the accused received a copy of the board of review's decision on March 18, 1958, and was "fully advised" of his right to petition this Court for grant of review within thirty days thereafter. However, "having determined that he does not desire to . . . appeal" and "for his own convenience," he requested that action be taken "to finalize" the sentence affirmed by the board of review "without further delay." The request concluded with a statement to the effect the accused understood that if he petitioned this Court for review, any "action taken toward effecting his discharge

. . . in reliance upon this request will be revoked" and he would "revert to his present status as a member of the Army."

As early as United States v Ponds, 1 USCMA 385, 3 CMR 119, we condemned as "a legal trap for the uninformed" the practice of having an accused sign a document of the kind recited above. We held that no such instrument "however imposing in appearance or verbiage" could operate as a waiver of the accused's right under the Uniform Code to petition this Court for review of his conviction. We held the "agreement" was a legal nullity so far as it purported to affect the accused's right to appeal his conviction to this Court. But a different question is presented by the discharge.

With the author of the present opinion dissenting, this Court held that affirmative action by the Government in effecting the accused's administrative discharge from the service does not abate a court-martial proceeding initiated before, but uncompleted at the time of, the separation. United States v Speller, 8 USCMA 363, 24 CMR 173; United States v Robertson, 8 USCMA 421, 24 CMR 231. We need not re-examine that holding at this time. The discharge here was issued █ in purported execution of the sentence of the court-martial. As such, at least from the time of the accused's petition for review, the characterization of the nature of the discharge as "dishonorable" is contrary to the provisions of Article 71, Uniform Code, and of no legal effect. Certainly under the terms of the "REQUEST" the characterization is now improper.[1] However, the exact legal effect of the act of separation, whatever its present characterization, need not be determined. It is enough for our purposes to hold that neither the "REQUEST" nor the failure of the

[1] No authority has been presented to us, and we know of none, which permits the issuance of a discharge with a condition for later revocation. Op JAGAF 1952/109, 2 Dig Ops, Enlisted Men, § 85.1. Moreover, the discharge itself has no condition endorsed on it and it is questionable whether it can be read together with the "REQUEST." In United States v Ponds, 1 USCMA 385, 3 CMR 119, we referred to the situation established by an instrument of the kind present here as presenting "a substantial and undecided question." Cf. Harmon v Brucker, 355 US 579, 78 S Ct 433, 2 L ed 2d 503.

Government to revoke the discharge when the accused filed his petition for grant of review deprived the accused of his right to have this Court review his conviction under the provisions of Article 67(b)(3), Uniform Code of Military Justice, 10 USC § 867.

Turning to the question of jurisdiction at the time of trial, the operative facts are these: The accused was a member of the Army Reserve. Under the Reserve Forces Act of 1955 (69 Stat 598), he was required to serve an initial period of active duty for training of "not less than three months or more than six months." On February 7, 1957, he was ordered to active duty for the period from February 16 to August 15. On August 2, 1957, he was tried and convicted by a special court-martial for misappropriation of a motor vehicle. His sentence included confinement at hard labor for three months. On September 25 he was released from confinement and on September 26 the unexecuted portion of the sentence was suspended for two months with provision for automatic remission. However, the accused was again placed in confinement on October 8; the suspension was vacated on October 11; and on November 14, 1957, he was tried for four other acts of wrongful appropriation committed after his initial release from confinement. He was convicted and sentenced to confinement at hard labor for six months and partial forfeiture of pay. The present offense was committed during that confinement.

Appellate defense counsel concede that the accused was liable to trial and punishment by court-martial for a violation of the Uniform Code during the period covered by his orders.[2] Counsel also concede that since the accused was tried and convicted for a violation of the Code before expiration of that period, he continued to be subject to military control during confinement. See United States v Rubenstein, 7 USCMA 523, 22 CMR 313. However, they contend that when the accused's sentence was suspended and he was released from confinement, he automatically reverted to civilian status because his orders were self-executing. See United States v Mansbarger, 20 CMR 449; JAGJ 1956/4587, June 6, 1956.[3] On the other hand, the Government maintains that the termination date on the accused's orders did not automatically end his amenability to military control, but that "certain administrative formalities are required to effect the change." See AR 140–220, March 27, 1957; United States v Klunk, 3 USCMA 92, 11 CMR 92. Alternatively, it maintains that regardless of the nature of the orders, the accused remained subject to military control under the provisions of the "time lost" statute.

Section 3638, Title 10 of the United States Code, provides in part as follows:

"An enlisted member of the Army who—

•　　•　　•　　•　　•

(3) is confined for more than one day while awaiting trial and disposition of his case, and whose conviction has become final;

(4) is confined for more than

---

[2] Article 2 of the Uniform Code of Military Justice, 10 USC § 802, provides that "persons lawfully called or ordered into, or to duty in and for training in, the armed forces" are subject to the Uniform Code. The Department of the Army has construed this provision as specifically applicable to reservists ordered to duty under the Reserve Forces Act. The Implementing Plan—Reserve Forces Act 1955, Annex B, paragraph 9n (2); see also JAGJ 1956/1169, January 12, 1956. The language of Article 2, supra, and the construction accorded it by the Department of the Army, clearly support the defense concession of jurisdiction.

[3] Article 2 of the Code provides that persons "in custody of the armed forces serving a sentence imposed by a court-martial" are subject to military law. The Manual for Courts-Martial, United States, 1951, says that "Custody and confinement import some physical restraint." Paragraph 174b, page 327. The record does not show, and we have not been informed, whether any sort of restraint was imposed upon the accused during the period of probation. Cf. Manual for Courts-Martial, supra, paragraph 174d, page 328.

one day under a sentence that has become final;

. . . . .

is liable, after his return to full duty, to serve for a period that, when added to the period that he served before his absence from duty, amounts to the term of his enlistment."

These provisions are amplified by Army regulations. AR 635–200, paragraph 12, provides:

"a. *Time lost to be made good.* Every individual in active Federal service who renders himself unable for more than 1 day to perform duty will be liable, after a return to full duty status, to serve for such period as is necessary to complete his full term of service or obligation, exclusive of such lost time.

"(1) Lost time in the sense of of these regulations refers to periods of more than 1 day during which an individual on active duty is unable to perform duty because of—

. . . . . .

(c) Confinement under sentence, or

(d) Confinement while awaiting trial or disposition of individual's case, if the trial results in conviction, or

. . . . . .

"(2) Time lost during an enlistment will be made good at the end of the enlistment period, except that, when an enlistment is extended by law, time lost will be made good at the end of the extension."

Other regulations make these provisions specifically applicable to reservists ordered to active duty under the Reserve Forces Act. Paragraph 39m, AR 140–220, provides that they "will be required to make up time lost for reasons" indicated in AR 635–200, paragraph 12, "except that commanding officers of training installations are authorized to waive this requirement." The regulation further provides that commanding officers of training installations "are authorized to issue necessary orders extending the initial period of active duty for training in cases of reservists who are required to make good time lost."

The appellant maintains that under the regulations the "time lost" provisions do not themselves modify the initial order but rather require an amendatory order before expiration of the original termination date. Since the record shows no evidence of an extending order, he argues he automatically reverted to civilian status in September 1957 when he was released from confinement. Conversely, the Government contends the regulation merely authorizes a waiver of bad time, and, hence, in the absence of an amending order, the accused is required to make good time lost. Support for this view is found in an opinion by the board of review. United States v Adams, CM 400190, September 24, 1958; see also JAGJ 1957/3644, April 3, 1957. In our opinion, this is a correct interpretation of the statute and applicable regulations.

The statute requires additional service but implies that the requirement may be waived by the military authorities. This construction is reflected in the regulations. AR 635–200 clearly contemplates additional service to make up bad time but AR 140–220 gives the appropriate commander authority to waive the bad time.

The statute and the regulations must be read into and considered a part of the accused's active duty orders. The accused was thus subject to military control for the time required to make good any time lost. According to the record, on July 13, he was placed in pretrial confinement to await trial on the first misappropriation charge; he remained in confinement until September 25. Thus, the accused was liable for at least "time lost" between July 13 and August 15, the expiration date of his orders, a period of thirty-two days. He made up less than half that period when he was again confined on charges on which he was later tried, convicted, and sentenced. Expiration of the period of his extended active duty did not relieve him of the obliga-

tion to serve his sentence. At the time of the commission of the present offense, he was a person "in custody of the armed forces serving a sentence imposed by a court-martial," and as such was subject to the Uniform Code of Military Justice, Article 2, supra.

Accordingly, the accused was subject to trial and punishment by court-martial.

The decision of the board of review is affirmed.

Judges LATIMER and FERGUSON concur.