UNITED STATES, Appellee

v.

Carlos J. RODRIGUEZ, Gunnery Sergeant
U.S. Marine Corps, Appellant

No. 07-0900

Crim. App. No. 9900997

United States Court of Appeals for the Armed Forces

Argued September 23, 2008

Decided January 6, 2009

ERDMANN, J., delivered the opinion of the court, in which STUCKY
and RYAN, JJ., joined.  EFFRON, C.J., and BAKER, J., each filed
a separate dissenting opinion.

Counsel


For Appellant:  Lieutenant Brian D. Korn, JAGC, USN (argued).

For Appellee:  Lieutenant Timothy H. Delgado, JAGC, USN
(argued); Major Brian K. Keller, USMC (on brief); Commander Paul
C. LeBlanc, JAGC, USN.

Military Judge:  R. S. Chester


**This opinion is subject to revision before final publication.**

United States v. Rodriguez, No. 07-0900/MC

Judge ERDMANN delivered the opinion of the court.

Gunnery Sergeant Carlos J. Rodriguez was convicted at a general court-martial of four offenses involving unlawful sexual acts with children. In its initial review of the case, the United States Navy-Marine Corps Court of Criminal Appeals set aside two specifications and authorized a rehearing. United States v. Rodriguez, No. NMCCA 9900997, 2002 CCA Lexis 259, 2002 WL 31433595 (N-M. Ct. Crim. App. Oct. 25, 2002) (unpublished). At the rehearing, Rodriguez was found guilty of two offenses involving sexual acts with children. In its second review of the case, the Court of Criminal Appeals affirmed the findings and sentence. United States v. Rodriguez, No. NMCCA 9900997, 2007 CCA LEXIS 251, 2007 WL 2059801 (N-M. Ct. Crim. App. July 17, 2007) (unpublished). We granted Rodriquez's petition for grant of review and specified two issues.[1]

Article 67(b), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867(b) (2000), provides that an accused may petition

---

[1] We specified review of the following issues:

   I. WHETHER THE MILITARY JUDGE IMPROPERLY SHIFTED THE BURDEN OF PROOF TO APPELLANT IN ASKING APPELLANT TO EXPLAIN THE VICTIM'S MOTIVES IN ACCUSING HIM OF SEXUAL ABUSE.

   II. WHETHER THIS COURT HAS JURISDICTION TO CONSIDER APPELLANT'S UNTIMELY PETITION IN LIGHT OF BOWLES v. RUSSELL, 127 S. Ct. 2360 (2007).

66 M.J. 488 (C.A.A.F. 2008).

United States v. Rodriguez, No. 07-0900/MC

this court for review of a decision of a Court of Criminal Appeals within sixty days from the earlier of the date upon which the accused is actually notified or the date upon which he or she is constructively notified of the decision of the Court of Criminal Appeals.  While there is no dispute in this case that the petition for grant of review was filed outside the sixty-day period, Rodriguez asserts that under this court's prior case law that period is nonjurisdictional and can be waived in this court's discretion.  See United States v. Tamez, 63 M.J. 201, 202 (C.A.A.F. 2006) (per curiam).  The Government responds that the statutory time limitation of Article 67(b), UCMJ, constitutes a mandatory congressional limitation and is not subject to waiver or expansion in the same manner as rule-based or court-created limitations.

In light of Bowles v. Russell, 127 S. Ct. 2360 (2007), we conclude that the congressionally-created statutory period within which an accused may file a petition for grant of review is jurisdictional.  As Rodriguez's petition for grant of review was filed outside that period, we lack the authority to entertain it.  We therefore vacate the grant of review in this case and dismiss the petition for grant of review.

## Background

The Court of Criminal Appeals issued its second decision in this case on July 17, 2007.  The record of trial reflects

3

United States v. Rodriguez, No. 07-0900/MC

that a copy of that decision was served upon Rodriguez's appellate defense counsel on that same day. On September 28, 2007, appellate defense counsel filed a "Motion to Submit Petition for Grant of Review Out of Time." In that motion appellate defense counsel stated that the "petition for grant of review [was] out of time by thirteen days" because "Appellant did not contact the Appellate Defense Division of the Navy-Marine Corps Appellate Review Activity until September 27, 2007 in order to express his desire to appeal his case to this Court." On that same day, this court ordered the Government to file an answer to Rodriguez's motion and held further action on the petition for grant of review in abeyance until the court acted upon the motion to file out of time.

On October 12, 2007, the Government moved to file an opposition to Rodriguez's motion to file his petition for grant of review out of time. The Government asserted that Rodriguez failed to demonstrate good cause for the court to suspend the sixty-day period within which to file a petition for grant of review.[2] On November 16, 2007, this court granted Rodriguez's motion to file his petition for grant of review out of time and ordered that he file a supplement to the petition for grant of review. Upon further consideration of the supplement to the

---

[2] C.A.A.F. R. 33 provides that "[f]or good cause shown, the Court may suspend any of these rules in a particular case, on

4

United States v. Rodriguez, No. 07-0900/MC

petition for grant of review and the other filings, we specified two issues for review including one which framed the issue as to whether this court has jurisdiction to entertain an untimely petition for grant of review. See Loving v. United States, 62 M.J. 235, 239 (C.A.A.F. 2005) ("every federal appellate court has a special obligation to 'satisfy itself . . . of its own jurisdiction'" (quoting Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986))).

## Discussion

When originally enacted as part of the Uniform Code of Military Justice in 1950,[3] Article 67(c) provided that an accused "shall have thirty days from the time he is notified of the decision of a board of review [now Court of Criminal Appeals] to petition the Court of Military Appeals [now the Court of Appeals for the Armed Forces] for a grant of review." Act of May 5, 1950, ch. 169, Pub. L. No. 81-506, 64 Stat. 107, 129-30 (Article 67(c)). Consistent with this congressional limitation, former Rule 21 of the court's Rules of Practice and Procedure required that a petition for grant of review be filed with the court within thirty days of the appellant receiving written notice of the lower court's decision. The court did not, however, view

---

application of a party or on its own motion, and may order proceedings in accordance with its direction."
[3] Act of May 5, 1950, 50 U.S.C. §§ 551-736 (1950) (repealed 1956).

5

this thirty-day limitation as a jurisdictional bar to entertaining petitions for grant of review that were filed outside the statutory period.  See United States v. Ponds, 1 C.M.A. 385, 386, 3 C.M.R 119, 120 (1952) (per curiam) (quoting Rule 21 of the Court of Military Appeals' Rules of Practice and Procedure, effective from July 11, 1951, to March 1, 1952).

In Ponds, the court considered whether a petition for grant of review filed forty-six days after the statutory filing period elapsed should be dismissed.  Id.  Rather than view the statutory filing period as jurisdictional, the court concluded that if an appellant could "establish some reasonable basis justifying his relief from [this] default" then untimely filing would not be a bar to this court's consideration of the case.  Id.  This conclusion was rendered in the context of the court expressing disapproval of agreements to waive the right to petition and reflected the court's underlying belief that "[t]he right of convicted persons freely and directly to petition this Court must be protected fully and in nowise abridged."  Id. at 387, 3 C.M.R. at 121.[4]

Following Ponds, this court adhered to its conclusion that an otherwise untimely petition for grant of review could be accepted by the court for good cause.  See, e.g., United States

---

[4] See also United States v. Cummings, 17 C.M.A. 376, 379, 38 C.M.R. 174, 177 (1968); United States v. Doherty, 10 C.M.A. 453, 455, 28 C.M.R. 19, 21 (1959).

United States v. Rodriguez, No. 07-0900/MC

v. Morris, 16 M.J. 101 (C.M.A. 1983) (misunderstanding of filing requirements); United States v. Landers, 14 M.J. 150 (C.M.A. 1982) (misunderstanding that may have been caused by the change of the statutory filing period from thirty to sixty days); United States v. Mills, 12 M.J. 225, 227 (C.M.A. 1982) ("misunderstanding directly or indirectly engendered by those responsible for serving upon him the decision of the Court of Military Review").

As those cases indicate, the court viewed the statutory filing period as nonjurisdictional even after Article 67, UCMJ, was amended in 1981 to extend the filing period to sixty days and to provide for constructive service of Court of Criminal Appeals' decisions. See Military Justice Amendments of 1981, Pub. L. No. 97-81, § 5, 95 Stat. 1085, 1088-89 (1981) (Article 67(c)). Most recently, in Tamez the court reiterated that "the time limits in Article 67, UCMJ, are not jurisdictional" and that the court could exercise its discretion to accept untimely petitions for grant of review "for good cause shown." 63 M.J. at 202.

However, in 2007 the United States Supreme Court changed the analytical landscape in terms of evaluating the jurisdictional significance of filing deadlines in appellate practice. In Bowles the Supreme Court considered Fed. R. App. P. 4(a)(1)(A), based upon 28 U.S.C. § 2107(a), and Fed. R. App.

7

United States v. Rodriguez, No. 07-0900/MC

P. 4(a)(6), based upon 28 U.S.C. § 2107(c).  127 S. Ct. at 2362-63.  Respectively, those rules provide that a civil litigant has thirty days to file a notice of appeal after entry of final judgment by a Federal District Court and that a District Court could extend the filing period for fourteen days.  Nonetheless, the District Court in Bowles extended the filing period for seventeen days rather than the fourteen days permitted by Fed. R. App. P. 4(a)(6).  Id. at 2362.  When Bowles filed his notice of appeal, he did so outside the rule's fourteen day period but within the seventeen days encompassed by the District Court's order.  Id.  The Supreme Court concluded that Bowles' untimely notice of appeal "deprived the Court of Appeals of jurisdiction."  Id. at 2366.

The Supreme Court held that where a limitation is derived from a statute "the taking of an appeal within the prescribed time is 'mandatory and jurisdictional.'"  Id. at 2363 (citations omitted).  In so holding, the Court distinguished between statute-based rules of limitation and those having their origin in court-created rules.  There is "jurisdictional significance [in] the fact that a time limitation is set forth in a statute . . . [b]ecause '[o]nly Congress may determine a lower federal court's subject-matter jurisdiction.'"  Id. at 2364 (quoting Kontrick v. Ryan, 540 U.S. 443, 452 (2004)).  In contrast to the rule for statute-based limitations, the Court noted that:

8

United States v. Rodriguez, No. 07-0900/MC

> [W]e have treated the rule-based time limit for criminal cases differently, stating that it may be waived because "[t]he procedural rules adopted by the Court for the orderly transaction of its business are not jurisdictional and can be relaxed by the Court in the exercise of its discretion.

Id. at 2365 (quoting Schacht v. United States, 398 U.S. 58, 64 (1970)). An important distinction between the jurisdictional statute-based limitations and those created within a court's internal rules is that the courts have "no authority to create equitable exceptions to jurisdictional requirements." Id. at 2366.

The Court illustrated this distinction by pointing to its own rules regarding the time limits for filing petitions for certiorari. The Supreme Court's rules provide a ninety-day filing deadline for certiorari in both civil and criminal cases. Id. at 2365 (citing Sup. Ct. R. 13.1). While the Court's jurisdiction over criminal appeals derives from rule-based limitations that can be waived, the Court noted that the ninety-day limitation for civil cases derives from 28 U.S.C. § 2101(c) and therefore the statute-based rule for civil cases constitutes a jurisdictional limitation on the Court's authority to entertain petitions for certiorari in civil cases. Id.

The Federal Circuit Courts of Appeals have followed the Bowles statutory/rule-based distinction in interpreting various filing deadlines. The First Circuit applied this analysis in determining that Fed. R. Crim. P. 35(a) was jurisdictional

9

United States v. Rodriguez, No. 07-0900/MC

"because the rule's seven-day time limit derives from a statute -- [18 U.S.C.] § 3582(c)."[5]  <u>United States v. Griffin</u>, 524 F.3d 71, 84 (1st Cir. 2008).  Similarly, the Second Circuit concluded that the exhaustion requirement applicable to petitions for review of an immigration judge's order was "statutory and jurisdictional."  <u>Grullon v. Mukasey</u>, 509 F.3d 107, 109 (2d Cir. 2007).  The Sixth Circuit concluded that Fed. R. Civ. P. 59(e) was a "claim-processing rule" which "[u]nlike the rule at issue in <u>Bowles</u>, . . . [was] promulgated by the Supreme Court under the Rules Enabling Act, 28 U.S.C. §§ 2071-72."[6]  <u>Nat'l Ecological Found. v. Alexander</u>, 496 F.3d 466, 475 (6th Cir. 2007).[7]

    We also note that a number of the Federal Circuit Courts of Appeals had previously held that Fed. R. App. P. 4(b), "Appeal in a Criminal Case," was jurisdictional but have reversed that conclusion in light of <u>Bowles</u> and the fact that the rule is not based in statute, despite the seemingly mandatory language of

---

[5] Fed. R. Crim. P. 35(a) deals with correcting clear errors in sentencing and provides:  "Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."

[6] Fed. R. Civ. P. 59(e) provides:  "A motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment."

[7] <u>See also Kingman Reef Atoll Invs., L.L.C. v. United States</u>, 541 F.3d 1189, 1195-96 (9th Cir. 2008); <u>Niswanger v. Powell</u>, 282 F. App'x 342, 343 (5th Cir. 2008); <u>West v. Norfolk</u>, 257 F. App'x 606, 607 (4th Cir. 2007); <u>United States v. Smith</u>, 238 F. App'x 356, 359 (10th Cir. 2007) (timely notice of appeal "mandatory and jurisdictional" under Fed. R. Crim. P. 35).

United States v. Rodriguez, No. 07-0900/MC

the rule.[8] See United States v. Frias, 521 F.3d 229, 232 (2d Cir. 2008); United States v. Garduno, 506 F.3d 1287, 1290-91 (10th Cir. 2007); United States v. Martinez, 496 F.3d 387, 388 (5th Cir. 2007); cf. United States v. Byfield, 522 F.3d 400, 403 (D.C. Cir. 2008). In light of the statutory/rule-based analysis established in Bowles and the subsequent circuit court decisions, it is appropriate for us to once again examine Article 67(b), UCMJ.

"[T]he entire system of military justice [is a] creature[] of statute, enacted by Congress pursuant to the express constitutional grant of power '[t]o make Rules for the Government and Regulation of the land and naval Forces.'" United States v. Beatty, 64 M.J. 456, 458 (C.A.A.F. 2007) (quoting U.S. Const. art. I, § 8, cl. 14; and citing William Winthrop, Military Law and Precedents 17 (2d ed. 1920)). In Articles 141 through 146, UCMJ, 10 U.S.C. §§ 941-946 (2000), Congress provided the source authority for the existence of this court. This court's authority or subject matter jurisdiction is defined by Article 67, UCMJ.[9] See Clinton v. Goldsmith, 526 U.S.

---

[8] Fed. R. App. P. 4(b)(1)(A) provides, in part: "In a criminal case, a defendant's notice of appeal must be filed in the district court within 10 days of the later of . . . ."

[9] The structure of appeal under the UCMJ is different than that established under the Fed. R. App. P. The latter, as noted, is both statute-based and rule-based, while the entire structure of military justice, including appeals, is statute-based.

11

529, 535 (1999) (stating this court's "independent statutory jurisdiction is narrowly circumscribed").

Article 67(a), UCMJ, sets forth three categories of cases that Congress requires this court to review:

(a)  The Court of Appeals for the Armed Forces shall review the record in --

  (1)  all cases in which the sentence, as affirmed by a Court of Criminal Appeals, extends to death;
  (2)  all cases reviewed by a Court of Criminal Appeals which the Judge Advocate General orders sent to the Court of Appeals for the Armed Forces for Review; and
  (3)  all cases reviewed by a Court of Criminal Appeals in which, upon petition of the accused and on good cause shown, the Court of Appeals for the Armed Forces has granted a review.

Pertinent to this case is subsection (a)(3) which directs this court to review cases which have been reviewed by a Court of Criminal Appeals and where there is a "petition of the accused" and "good cause shown."  The statute clearly establishes that both of these predicates must exist before the congressional mandate to review a case arises.

Article 67(b), UCMJ, sets forth the criteria for filing a petition with this court:

(b)  The accused may petition the Court of Appeals for the Armed Forces for review of a decision of a Court of Criminal Appeals within 60 days from the earlier of --

  (1)  the date on which the accused is notified of the decision of the Court of Criminal Appeals; or
  (2)  the date on which a copy of the decision of the Court of Criminal Appeals, after being served on

12

> appellate counsel of record for the accused (if any), is deposited in the United States mails for delivery . . . .

While the option of whether to petition or not petition the court rests with the appellant ("may"), Congress established without qualification when such petitions must be filed. Under the plain language of the statute, the petition must be filed within the sixty-day statutory time limit.

Although we believe that the timeliness language of the statute is clear, unambiguous and mandatory, Rodriguez argues that despite the statutory/rule-based distinction of Bowles, the use of the word "may" renders the time limitation in this statue permissive rather than mandatory. However, a reading of the plain language clearly reflects that the word "may" refers only to the act of petitioning this court. See United States v. Lewis, 65 M.J. 85, 88 (C.A.A.F. 2007) ("Statutory construction begins with a look at the plain language of a rule." (citing United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241-42 (1989))).

As we read the plain language of Article 67(b), UCMJ, an appellant may file a petition for grant of review and, if he or she chooses to do so, it must be done within the sixty-day time limitation. Nothing within Article 67(b)'s statute-based time limitation is permissive and there is no indication that the court can waive the limitation for equitable reasons. The

sixty-day period "governs this case [and] is specific and unequivocal." See Clark v. Lavallie, 204 F.3d 1038, 1040 (10th Cir. 2000) (dealing with statute-based Fed. R. App. P. 4(a)(6)).

Even if we were to conclude that there is some ambiguity in these statutes, the legislative history of Article 67(b), UCMJ, provides a clear picture of congressional intent. Congress amended Article 67, UCMJ, in 1981, extending the period within which to petition this court from thirty to sixty days and providing a method for constructive service of a Court of Criminal Appeals' decision. Military Justice Amendments of 1981, Pub. L. No. 97-81, § 5, 95 Stat. 1085, 1088-89 (1981) (Article 67(c)). A primary motivation for the 1981 amendments to Article 67, UCMJ, was to provide a means of ensuring finality to cases. The House Report on the Military Justice Amendments of 1981 noted the "concrete evidence . . . that in some instances appellate review of cases could not be completed" and that such cases could be "held in limbo for up to five years with no finality in sight." H.R. Rep. No. 97-306, at 7 (1981). Concerning the purpose of the amendment, the House Report states:

> This amendment would continue to allow the opportunity to petition for a further review to expire by statute upon passage of time after the accused is notified of the adverse decision of the lower court, but in contrast, the current proposal would permit the period to commence running upon either actual notice or constructive notice by mail.

14

United States v. Rodriguez, No. 07-0900/MC

Id. at 8 (emphasis added).  The Senate Report expresses a similar concern for finality.  The Senate Report states that Article 67, UCMJ, allows "the opportunity to petition for further review to expire by statute" and states further:

> Once again, however, one must note that the right to appeal is not effected [sic].  Instead, the result is that the opportunity lapses.  Furthermore, the opportunity lapses only when a variety of factors -- all in the control of the accused -- compound.

S. Rep. No. 97-146, at 35-36 (1981) (emphasis added).  This legislative history reflects that Congress intended the sixty-day period to be a statute-based limitation and mandatory.  The reports of both the House and the Senate focus on the fact that an appellant is in sole control of the decision to appeal and in large measure in control of the effectiveness of service of process.

Article 67(c), UCMJ, as originally enacted, stated that an accused "shall have thirty days" to petition for a grant of review.  (emphasis added).  Act of May 5, 1950, ch. 169, Pub. L. No. 81-506, 64 Stat. 107, 129-30 (Article 67(c)).  Although the 1981 amendment to Article 67(c) provided that the accused "may" petition for review within sixty days, the mandatory nature of the statutory filing period was not altered.  As noted in the House Report, the amendment "continue[d] to allow the opportunity to petition for a further review to expire by statute."  H.R. Rep. No. 97-306, at 8 (emphasis added).  Only

15

the opportunity to petition for review is permissive; the time within which to do so is not. Any other construction of the relationship between opportunity to petition and the time within which to file is inconsistent with the expressed congressional desire to achieve finality. If the time limitation is triggered and an accused does not act, Congress intended the matter to end.

We conclude that the opportunity to petition this court "lapses" or "expires by statute" when the sixty-day statute-based limitation is not met and that the sixty-day limitation is jurisdictional and mandatory.[10] Relief from that time limitation does not rest in the discretion of the court.[11] To the extent that Tamez and earlier cases of this court are inconsistent with this holding, they are overruled.[12]

---

[10] The structure of appeal under the UCMJ is different than that established under the Fed. R. App. P. The latter, as previously noted, is both statute-based and rule-based. Thus, Fed. R. App. P. 4(b) dealing with criminal appeals which is rule-based is not jurisdictional. On the other hand, the entire structure of military justice, including appeals, is statute-based. This foundational difference creates an inconsistency between the civilian criminal appellate process and the military criminal appellate process with respect to time limitations. However, that apparent inconsistency is an issue for congressional consideration.

[11] Our conclusion that Article 67(b), UCMJ, is mandatory and jurisdictional does not wholly preclude an accused from seeking review by this court. An accused may still ask the Judge Advocate General to certify the case for review pursuant to Article 67(a)(2), UCMJ.

[12] Our holding is limited to petitions for grant of review filed under Article 67(b), UCMJ. We reserve for another case whether and under what circumstances the court may waive other,

United States v. Rodriguez, No. 07-0900/MC

There is no dispute that Rodriguez's petition for grant of review was untimely and therefore it must be dismissed.

## Decision

The grant of review dated June 12, 2008, is vacated and the petition for grant of review is dismissed.

---

nonjurisdictional filing periods set forth in this court's rules.  Compare United States v. Frias, 521 F.3d 229, 234 (2d Cir. 2008) ("When the government properly objects to the untimeliness of a defendant's criminal appeal, Rule 4(b)[a court-prescribed rule] is mandatory and inflexible."), with United States v. Ortiz, 24 M.J. 323, 325 (C.M.A. 1987) (indicating that the court will seek "adequate explanations" for "untimeliness which violates this Court's Rules" regarding filing supplements to petitions for grant of review).

United States v. Rodriguez, No. 07-0900/MC

EFFRON, Chief Judge (dissenting):

In Bowles v. Russell, 127 S. Ct. 2360, 2364 (2007), the Supreme Court reaffirmed its "longstanding treatment of statutory time limits for taking an appeal as jurisdictional" and noted that the Court's decisions had "recognized the jurisdictional significance of the fact that a time limitation is set forth in a statute." The Court stated that a limitation is "jurisdictional when Congress forbids federal courts from adjudicating an otherwise legitimate class of cases after a certain period has elapsed from final judgment." Id. at 2366 (quotation marks omitted). If Congress has forbidden our Court from adjudicating an otherwise legitimate petition for review after the passage of a certain period of time, we may not review the petition even if the accused can establish good cause for not meeting the statutory filing deadline. See id.

The majority opinion concludes that Congress established such a prohibition in Article 67, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867 (2000). United States v. Rodriguez, ___ M.J. ___ (3) (C.A.A.F. 2009). For the reasons set forth below, I respectfully disagree.

The jurisdictional statute

Article 67 differs from the statute at issue in Bowles in significant respects. Congress restricted appeals under the Bowles statute, 28 U.S.C. § 2107, and left courts with limited discretion to reopen the filing period under specified circumstances:

> (a) Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree.
>
> . . . .
>
> (c) The district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good cause. In addition, if the district court finds --
>
>> (1) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry, and
>>
>> (2) that no party would be prejudiced,
>
> the district court may, upon motion filed within 180 days after entry of the judgment or order or within 7 days after receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal.

28 U.S.C. § 2107 (2000).

By contrast, Congress framed Article 67 as a requirement to review cases, not as a limitation on review:

2

> (a) The Court of Appeals for the Armed Forces shall
> review the record in --
>
>> (1) all cases in which the sentence, as
>> affirmed by a Court of Criminal Appeals,
>> extends to death;
>>
>> (2) all cases reviewed by a Court of
>> Criminal Appeals which the Judge Advocate
>> General orders sent to the Court of Appeals
>> for the Armed Forces for review; and
>>
>> (3) all cases reviewed by a Court of
>> Criminal Appeals in which, upon petition of
>> the accused and on good cause shown, the
>> Court of Appeals for the Armed Forces has
>> granted a review.

Article 67, UCMJ.  The phrase "shall review" embodies a congressional mandate to conduct appellate proceedings in the three categories of cases.  See 10 U.S.C. § 101(f)(1) (2000) (providing that in Title 10 of the United States Code, the word "'shall' is used in an imperative sense").

In the statutory provision governing a servicemember's ability to petition for review under Article 67, Congress used permissive language:  "The accused may petition the Court of Appeals for the Armed Forces for review of a decision of a Court of Criminal Appeals within 60 days from the earlier of" the date of actual service or the date of constructive service.  Article 67(b), UCMJ; see 10 U.S.C. § 101(f)(2) (providing that in Title 10 of the United States Code, the word "'may' is used in a permissive sense").  Notably, Congress did not employ the formula provided in Title 10 for the use of "may" in a

restrictive sense. See 10 U.S.C. § 101(f)(3) (providing that in Title 10 of the United States Code, the phrase "'no person may . . .' means that no person is required, authorized, or permitted to do the act prescribed").

Congress also provided in Article 67(b) that this Court "shall act upon such a petition promptly in accordance with the rules of the court." The Court's rules contain the sixty-day time period for filing a petition, C.A.A.F. R. 19(a), as well as express authority to waive the rules. C.A.A.F. R. 33.

Background: Development of the statute

The initial version of the UCMJ contained the following provision concerning opportunity of the accused to file a petition for review:

> The accused shall have thirty days from the time he is notified of the decision of a board of review to petition the Court of Military Appeals for a grant of review. The court shall act upon such a petition within thirty days of the receipt thereof.

Act of May 5, 1950, ch. 169, art. 67(c), 64 Stat. 107, 129-30 (1950) (codified as amended at 10 U.S.C. § 867(b) (2000)).

From the first cases arising under the UCMJ, Article 67 has been interpreted as permitting consideration of petitions filed beyond the statutory time period upon a showing of good cause. See United States v. Ponds, 1 C.M.A. 385, 386 3 C.M.R. 119, 120

(1952).  Over the next three decades, the good cause interpretation represented the state of the law in the military system.

In 1981, the Department of Defense requested amendments to Article 67 with respect to notice of the opportunity to petition for review, focusing on problems in identifying the time that marked the beginning of the opportunity to petition this Court for review.  See United States v. Byrd, 53 M.J. 35, 36 (C.M.A. 2000).  The proposed legislation sought relief from our decision in United States v. Larneard, 3 M.J. 76 (C.M.A. 1977), which held that constructive service of the lower court's decision would not suffice to initiate the period for review and thereby precluded the running of the filing period in the absence of proven actual notice.  See S. Rep. No. 97-146, at 35 (1981).

Congress agreed with the Department and enacted authority for constructive notice, thereby overcoming the effect of Larneard.  Military Justice Amendments of 1981, Pub. L. No. 97-81, § 5, 95 Stat. 1088-89 (1981) (codified as amended at 10 U.S.C. § 867 (2000)).  Under the constructive notice provision, the timeline for the opportunity to petition for review commences when the government provides either actual or constructive notice of the lower court's decision.  Three other

5

legislative changes accompanied the constructive notice provision as part of the 1981 amendments, each of which underscore the nonrestrictive nature of the legislation. First, Congress inserted the permissive phrase "may petition" into the statute. Second, the statute expanded the opportunity to file a petition for review from thirty days to sixty days. Third, the legislation replaced the language providing that this Court "shall act" within thirty days with a more flexible requirement to act "promptly in accordance with the rules of the court." See id.

The legislative history of the 1981 amendments, although not necessary for interpretation of this statute, is consistent with a permissive reading of the legislation. The report of the House Armed Services Committee emphasized the continuity of the opportunity to petition for review, and noted that the legislation addressed the relationship between notice and the commencement of the filing period:

> This amendment would continue to allow the opportunity to petition for a further review to expire by statute upon passage of time after the accused is notified of the adverse decision of the lower court, but in contrast, the current proposal would permit the period to commence running upon either actual notice or constructive notice by mail. However, the period for petition would be extended from 30 to 60 days. . . .
>
> In effect, the amendment would authorize giving an accused constructive notice of his right to petition the Court of Military

6

> Appeals if efforts to make personal service
> have failed.

H.R. Rep. No. 97-306, at 8 (1981).

The Senate report also described the statute as providing an opportunity for review and emphasized that the accused would lose the opportunity to petition only if the responsibility for the late filing was attributable to that individual:

> [O]ne must note that the right to appeal is not [affected]. Instead, the result [of the sixty days passing without a petition filing] is that the opportunity lapses. Furthermore, the opportunity lapses only when a variety of factors -- all in the control of the accused -- compound. In this respect, the waiver would not be precisely "unknowing" on the accused's part. An accused who is interested in preserving appellate opportunities may protect those opportunities by supplying the power of attorney, or by taking care to keep addresses current, or by maintaining contact with his appellate counsel. Thus, an unfortunate result is likely to occur only when the accused intentionally or negligently fails to take simple measures to protect the accused's own interests, measures which must be explained by both the trial and appellate defense counsel.

S. Rep. No. 97-146, at 36. Both reports are consistent with the then-existing state of the law, under which the opportunity to petition for review would expire after the statutory number of days, subject to the ability of the accused to establish, through a showing of good cause, that the late filing was not a matter within his or her control. It is noteworthy that while

7

United States v. Rodriguez, No. 07-0900/MC

Congress addressed this Court's interpretation of Article 67 to establish a constructive notice provision in light of Larneard, the amended statute did not seek to supplant the Ponds line of cases.


Interpretation of Article 67 after the 1981 amendments

In the immediate aftermath of the 1981 legislation, the amended statute was interpreted as permitting late filing upon good cause.  See, e.g., United States v. Landers, 14 M.J. 150 (C.M.A. 1982).  If that interpretation had been in error, the legislative process provided an excellent opportunity for corrective action during congressional consideration of the Military Justice Act of 1983, Pub. L. 98-209, 97 Stat. 1393 (1983).  That legislation contained significant changes to post-trial procedures, including the appellate process, with particular attention to the impact of this Court's case law. See, e.g., S. Rep. No. 98-53, at 28 (1983).  Notwithstanding the specific focus on appellate matters in the 1983 legislation, Congress did not enact any changes to the longstanding, permissive consideration of belated petitions upon a showing of good cause.

Article 67(b) has operated as intended by Congress.  The constructive service provision has enabled the Government to establish an earlier beginning point for the opportunity to

submit a petition via constructive service. The sixty-day opportunity for filing a petition for review identifies the period within which the accused is responsible for filing a petition. The permissive interpretation of Article 67 follows the statutory rule of construction in 10 U.S.C. § 101(f)(2) and provides a very limited basis for appellate review when the accused establishes that a belated filing is not the result of his or her own irresponsibility. See H.R. Rep. No. 97-306, at 7-8; S. Rep. No. 97-146, at 36.

As Judge Baker points out in his separate opinion, the permissive interpretation is consistent with the intent of Congress in enacting the UCMJ and in establishing this Court. ___ M.J. at ___ (12) (Baker, J., dissenting). See also United States v. Tamez, 63 M.J. 201, 202 (C.A.A.F. 2006) (noting that the unchanging practice of our Court in considering belated petitions upon good cause shown "is consistent with Congress's intent that servicemembers have the opportunity to obtain appellate review in an independent civilian court").

The permissive reading also is consistent with the manner in which Congress has structured the military justice system, particularly the system's reliance on government-furnished military counsel to represent military personnel in the appellate process. See Article 70, UCMJ, 10 U.S.C. § 870 (2000). When a servicemember relies on a military attorney and

United States v. Rodriguez, No. 07-0900/MC

the petition is filed late because of incorrect advice or inaction by the military attorney, the Ponds interpretation of Article 67 provides an appropriate occasion for the servicemember to demonstrate that the belated filing is the responsibility of the government-provided attorney, not the individual servicemember.  See Byrd, 53 M.J. at 36-37.

In a number of cases now pending before the Court, appellants allege that the responsibility for the late filing rests with military appellate counsel.  These cases include alleged deficiencies in case tracking, see United States v. Greenwood, No. 08-0618/AF; United States v. Tuberville, No. 08-0612/AF; alleged neglect of an attorney's commitment to file a timely petition, see United States v. Angell, No. 09-0098/AR; and alleged failure to ensure continuity of counsel after departure of assigned military appellate counsel, see United States v. Person, No. 08-0534/NA; United States v. Esposito, No. 08-0547/NA.  Under the lead opinion's interpretation of Article 67, however, every case involving a belated filing must be dismissed without regard to whether the appellant can establish that the responsibility for the filing deficiency rests with the military attorney furnished by the government under Article 70. Such a result is not required by the language, development, or purpose of Article 67.

10

The opportunity to demonstrate good cause for a belated filing comports with the permissive wording of the statute, the statutory rules of construction for Title 10, the legislative history of Article 67, the purpose of the UCMJ, the consistent interpretation of the statute, and subsequent legal developments. As such, Article 67 does not constitute a congressional prohibition on appellate review under Bowles. I respectfully dissent from the lead opinion's conclusion that Congress established Article 67 as a mandatory prohibition that precludes appellate review irrespective of whether there is good cause for a belated filing.

United States v. Rodriguez, No. 07-0900/MC

BAKER, Judge (dissenting):

Introduction

Today the Court reverses more than fifty years of military justice precedent and practice based on Bowles v. Russell, 127 S. Ct. 2360 (2007), a Supreme Court case addressing the time for appeals under the federal habeas statute, 28 U.S.C. § 2107 (2000). In Bowles, the Court concluded that "the taking of an appeal within the prescribed time is 'mandatory and jurisdictional'" and that 28 U.S.C. § 2107(c) prescribed such a time limit based on the text of the statute. 127 S. Ct. at 2363 (citation omitted). However, in applying Bowles to this Court's jurisdiction, the majority ignores three critical distinctions.

First, the Bowles Court was addressing a federal civil statute, 28 U.S.C. § 2107, not the Uniform Code of Military Justice (UCMJ).

Second, Congress did not legislate or intend to prescribe this Court's jurisdiction in the same manner as a district court's application of 28 U.S.C. § 2107. Read in the context of the statute as a whole, the language in Article 67, UCMJ, 10 U.S.C. § 867 (2000), defines a permissive right to petition this Court -- an "accused may petition" the Court. Congress did not specifically limit the amount of time in which an accused must file a petition before this Court; it required that this Court review all petitions filed within sixty days. After sixty days,

consideration of a petition is discretionary. Congress had the opportunity to amend this language in light of this Court's interpretation in 1981. It did not. Instead, Congress changed the modal verb in Article 67(b), UCMJ, from "shall" to "may." See Military Justice Amendments of 1981, Pub. L. No. 97-81, § 5, 95 Stat. 1085, 1088-89 (1981) (Article 67(c)).

Third, as the Supreme Court recognized in Parker v. Levy, 417 U.S. 733, 743 (1974), as well as in cases subsequent to Bowles, the military justice system is a distinct system. Supreme Court precedent, including precedent involving the death penalty, does not necessarily apply in the military context, or apply as it does in the civilian context. See Kennedy v. Louisiana, 129 S. Ct. 1, 2 (2008) ("[A]uthorization of the death penalty in the military sphere does not indicate that the penalty is constitutional in the civilian context.") (order denying rehearing).

As a result, I respectfully dissent. To paraphrase Justice Jackson, this Court should be last, not first, to close the courtroom door to members of the armed forces. See Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 655 (1952) (Jackson, J., concurring). Congress did not specifically limit this Court's jurisdiction, and we should not do so now. "'[O]nly Congress may determine a lower federal court's subject-matter jurisdiction.'" Bowles, 127 S. Ct. at 2364.

2

United States v. Rodriguez, No. 07-0900/MC

<u>From Ponds to Byrd to Bowles</u>

Since the advent of the UCMJ, this Court has held that the time limits for filing a petition for appeal before this Court do not impose a jurisdictional bar to appeal where there is good cause shown for filing out of time. <u>United States v. Tamez</u>, 63 M.J. 201, 202-03 (C.A.A.F. 2006) (per curiam); <u>United States v. Byrd</u>, 53 M.J. 35, 38 (C.A.A.F. 2000); <u>United States v. Ponds</u>, 1 C.M.A. 385, 387, 3 C.M.R. 119, 121 (1952) (per curiam). The analysis underpinning this longstanding conclusion is summarized in <u>Byrd</u>, a 2000 opinion in which the five judges on this Court unanimously concluded:

> Both Article 67 and Rule 19 are phrased in terms of the opportunity of an appellant to file a petition for review. Neither the statute nor the rule states that the time periods are jurisdictional, nor do they preclude our Court from accepting petitions outside the time period under appropriate circumstances.

53 M.J. at 38.

This analysis was echoed in <u>Tamez</u>, a 2006 per curiam opinion in which this Court again emphasized the importance of civilian oversight of the military instrument, in this case the military justice system, through operation of the United States Court of Appeals for the Armed Forces.

> Such a practice is consistent with Congress's intent that servicemembers have the opportunity to obtain appellate review in an independent civilian court. Were the sixty-day timeline jurisdictional, an appellant might be without appellate recourse in this Court regarding claims such as ineffectiveness of

3

> counsel or complaints under Article 13, UCMJ, 10
> U.S.C. § 813 (2000). This was not Congress's intent.

63 M.J. at 202-03 (footnote omitted).

The majority now concludes that Bowles changes over fifty years of consistent precedent because "Congress established without qualification when such petitions must be filed[,]" United States v. Rodriguez, __ M.J. __ (13) (C.A.A.F. 2009), and Bowles determined that "[t]here is 'jurisdictional significance [in] the fact that a time limitation is set forth in a statute.'" Id. at __ (8) (quoting Bowles, 127 S. Ct. at 2364). This reasoning is flawed.

First, Bowles does not dictate a result. Rather, it enunciates a rule of interpretation. Where Congress has prescribed a time limit for filing an appeal, that time limit is "'mandatory and jurisdictional.'" Bowles, 127 S. Ct. at 2363 (citation omitted). Conversely, if a time period in a statute does not prescribe a jurisdictional limit, it is not mandatory. In other words, the Supreme Court did not purport to substitute this general principle of statutory construction for the actual statutory language or expressed congressional intent that may exist in a given statute. Not all timelines are jurisdictional. See id. at 2368 (Souter, J., joined by Stevens, J., Ginsburg, J., and Breyer, J., dissenting) ("But neither is jurisdictional

4

treatment automatic when a time limit is statutory, as it is in this case.").

Applying this rule of construction, the Supreme Court concluded that 28 U.S.C. § 2107(c), which addresses reopening the time to file a habeas appeal in an Article III district court, is mandatory and jurisdictional, "[b]ecause Congress specifically limited the amount of time by which district courts can extend the notice-of-appeal period . . . ." Bowles, 127 S. Ct. at 2366 (emphasis added). Fed. R. App. P. 4(a)(6) implements § 2107(c), and provides: "The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied . . . ." In contrast, Article 67, UCMJ, does not use comparable prescriptive language.

Second, regardless of what Bowles states or requires, the Supreme Court has repeatedly recognized that military society is distinct from civilian society. As a result, principles of law enunciated by the Supreme Court may apply differently, or perhaps not at all, in military justice practice. See Parker, 417 U.S. at 744 ("Just as military society has been a society apart from civilian society, so 'military law' . . . is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment.") (citations

5

omitted).[1]  One role this Court plays is to place Supreme Court

precedent in the military context.  See United States v. Marcum,

60 M.J. 198, 205 (C.A.A.F. 2004) ("[W]hen considering how

[certain laws] apply in the military context, this Court has

relied on Supreme Court civilian precedent, but has also

specifically addressed contextual factors involving military

life.").  Part of that context is the emphasis Congress placed

on the opportunity for servicemembers to appeal convictions to a

civilian appellate court within the framework of the UCMJ.  The

majority of this Court, however, places all its emphasis on a

mechanical application of Bowles, but misses the equally

compelling language from Parker stressing the potential

distinction between civilian and military law.

Third, and most importantly, the question before this Court

is not whether Bowles applies, but whether the statute to which

we are asked to apply Bowles incorporates a congressionally

prescribed time limit for filing appeals or a permissive time

limit.  Did Congress specifically limit the amount of time

---

[1] This point is driven home by the Supreme Court's denial of reconsideration in Kennedy, 129 S. Ct. at 3 (order denying rehearing).  In that case, the Supreme Court did not consider the military death penalty for child rape in its original opinion when it sought to analyze the national consensus for this punishment.  Id. at 1.  The Court denied a rehearing, stating that Kennedy "involves the application of the Eighth Amendment to civilian law; and so we need not decide whether certain considerations might justify differences in the application of the Cruel and Unusual Punishments Clause to military cases . . . ."  Id. at 2.

within which a servicemember must file an appeal?  No.  To the contrary, this Court concluded in Byrd and Ponds that Article 67, UCMJ, contains a permissive time limit.  The UCMJ limited the amount of time in which an appellant could avail himself of the opportunity to petition this Court and as a matter of right have his petition reviewed.  In 1981, Congress had the opportunity to amend this language, in light of this Court's understanding of the law.  It chose not to do so, as Chief Judge Effron details in his dissent.  Now, based on Bowles, a decision construing different language in a civilian statute, a majority of this Court concludes that this Court's interpretation of Article 67(b), UCMJ, has been wrong since 1952.  But while Bowles may give us occasion to revisit the meaning of Article 67, UCMJ, it does not change its meaning.

Article 67, UCMJ

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).

Article 67, UCMJ, states:

(a)  The Court of Appeals for the Armed Forces shall review the record in --
    (1)  all cases in which the sentence, as affirmed by a Court of Criminal Appeals, extends to death;

> (2)  all cases reviewed by a Court of Criminal
> Appeals which the Judge Advocate General orders sent
> to the Court of Appeals for the Armed Forces for
> review; and
> (3)  all cases reviewed by a Court of Criminal
> Appeals in which, upon petition of the accused and on
> good cause shown, the Court of Appeals for the Armed
> Forces has granted a review.
>
> (b)  The accused may petition the Court of Appeals for
> the Armed Forces for review of a decision of a Court
> of Criminal Appeals within 60 days from the earlier of
> --
>
> . . .

Article 67, UCMJ.

At least two interpretations are plausible.  First, one can argue that the language prescribes a time limit for filing an appeal.  This is the view of the majority.  Under this construction, while an appellant "may" file an appeal, "within 60 days" operates as a firm limit on this Court's jurisdiction and not just a bar on an appellant's opportunity to petition this Court.  That is because section (a)(3), defining this Court's jurisdiction for good cause shown, is linked to section (b), and review under section (a)(3) is only triggered "upon petition of the accused."  However, if this reading were correct and compelled, then Ponds, Byrd, and Tamez, et al., would have depended on construing this section as procedural rather than jurisdictional.  In that case, Bowles would change the analysis.  But Ponds, Byrd, and Tamez, et al., did not rely on this

8

distinction; these cases relied on the plain text of the Article and Congress's intent.

That is because a second interpretation of Article 67(b), UCMJ, is that the clause creates a permissive timeline for an appellant to file a notice of appeal. He must file "within 60 days" to preserve his right to have this Court review his petition. Otherwise, this Court is not obliged to review his petition. But it does not preclude this Court from doing so if good cause is shown "upon petition of the accused." Article 67(a)(3), UCMJ.

This reading of the statute is based on the plain language and, in particular, the modal verbs chosen and not chosen. This construction is also based on the placement of the clause within Article 67, UCMJ. The Court's jurisdiction is defined in section (a) and the appellant's right to petition is defined in section (b). As important, this reading is consistent with the legislative history cited by the majority, the same history that also informed Byrd and Tamez.

Congress knows how to mandate when it wishes to do so. For example, Congress intended that an accused have the opportunity to appeal to this Court, but should not be required to do so, for the appeal of right rests at the Courts of Criminal Appeals. As a result, it chose the modal verb "may" rather than "shall" to delimit an accused's right to seek discretionary review

before this Court.  See Article 67(b), UCMJ.  Whether Congress set a time limit for an accused to do so is more ambiguous. Congress could have used words like "shall be filed within 60 days" or "must be filed within 60 days," or used words similar to the language at issue in Bowles, "but only if" the accused "files within 60 days."  Instead, Congress chose to use only the phrase "within 60 days."  Nevertheless, it is reasonable to conclude based on the legislative history that this language represents a filing deadline.  But it is a deadline on the accused, not a "specific limitation" on this Court's jurisdiction.

Had Congress wished to "specifically limit" this Court's jurisdiction it would have amended Article 67(a)(3), UCMJ, which addresses this Court's discretionary jurisdiction.  For example, Congress could have amended this clause to state that this Court shall hear an appeal "upon good cause shown, provided that such petition is filed within 60 days."  Or, if Congress intended to specifically limit this Court's jurisdiction in Article 67(b), UCMJ, it could have directed the filing deadline to this Court rather than the accused.  That is what Fed. R. App. P. 4(a)(6), the rule implementing the statute at issue in Bowles, directs by using the words "but only if."  The predicate statute is equally express in its mandatory effect:  "no appeal shall bring . . . before a court of appeals for review unless notice of appeal is

10

filed, within thirty days after the entry of such judgment, order or decree."  28 U.S.C. § 2107(a) (emphasis added).  Most importantly, Congress used prescriptive language in defining this Court's jurisdiction in Article 67(a), UCMJ:

> (a)  The Court of Appeals for the Armed Forces <u>shall review</u> the record in --
>
> . . . .
>
> (3)  all cases reviewed by a Court of Criminal Appeals in which, upon petition of the accused and on good cause shown, the Court of Appeals for the Armed Forces has granted a review.

(Emphasis added.)

Congress knows the difference between "shall" and "may" and between "must" and "may."  In this statutory clause, it chose "may."  For sure, "may" can convey prescription, as in the case of <u>Bowles</u>, where district courts may hear petitions, but only if the filing deadline is met.  Indeed, as the majority notes, in 1981, Congress changed section (b) from "shall" to "may" while extending the period during which an appellant may file a petition to this Court.  But Congress did not choose to alter this Court's jurisdiction at the same time.  Against the backdrop of twenty-nine years, starting with <u>Ponds</u>, of the Court interpreting this section of the law as a permissive right of an accused to petition, as opposed to a prescription on the jurisdiction of this Court, Congress did not specifically limit this Court's jurisdiction.  To the contrary, Article 67(a),

11

UCMJ, continues to state that this Court "shall review" the record in all cases upon petition of the accused and on good cause shown.  Thus, the presence of the modal verb "shall" in Article 67(a), UCMJ, is as important as the absence of such a verb in Article 67(b), UCMJ.

Nonetheless, the majority concludes that there is only one possible way to read the statute, and that interpretation is in a manner inconsistent with how Article 67, UCMJ, has been read for over fifty years.  Recall, Bowles does not purport to rewrite or change the law; it only insists that courts give full effect to statutory timelines where "Congress specifically limited the amount of time" within which a court is authorized to hear an appeal.  127 S. Ct. at 2366.  Congress has not "specifically limited the amount of time" within which this Court may, of its own accord, consider a petition for review. This conclusion is all the more evident when the statutory text is considered in the context of the statute as a whole.

The Broader Context of the Statute as a Whole

The text of Article 67, UCMJ, does not appear in a vacuum. Rather, it appears within the structure of the UCMJ, which defines a distinct system of military justice based on four pillars relevant to this case.

First, Congress intended that this Court provide civilian oversight of the military justice system through exercise of

12

appellate jurisdiction.  This Court's role is to provide for military discipline and to uphold the rights of servicemen and women in the criminal context.  Henceforth, such review shall be foreclosed to appellants who are negligent or indecisive in seeking appeal, even when these appellants show good cause for delay.  But it will also be denied to appellants whose counsel fail to timely appeal or, where through administrative oversight, the appellate defense offices miss deadlines.  And it will be denied to appellants who do not understand the system or how to activate it.  These may be just the servicemembers for whom Congress felt civilian review might be particularly important.

Second, Congress recognized that the military justice system would draw on civilian principles of law, but nonetheless operate as a distinct and separate system of justice.  The Supreme Court has recognized this distinction, as well.  Parker, 417 U.S. at 743.  Most recently, and after Bowles, the Supreme Court reiterated the distinction in Kennedy.  129 S. Ct. at 2 ("The laws of the separate States, which have responsibility for the administration of the criminal law for their civilian populations, are entitled to considerable weight over and above the punishments Congress and the President consider appropriate in the military context.") (order denying rehearing).  It is in this context that Congress also intended the exercise of

civilian oversight through this Court to buttress public confidence that the military justice system is fair and operates in a manner consistent with constitutional values.

This is especially true in a system where the government determines how physical and human resources are allocated for defense purposes.  It is the government that is responsible for staffing the military justice system.  It is the government that assigns appellate defense counsel.  It is the government that provides administrative support to the appellate defense offices.  And, it is the government that provides computer service to these offices.  It is also the government that now, at this Court's invitation, seeks to foreclose civilian appellate review in cases where allegations emerge that military appellate counsel provided ineffective assistance of counsel (IAC) or that the government-staffed appellate defense office's processing of the appeal may be flawed.

Third, Congress intended the UCMJ to be applied in a uniform manner across services through operation of a central appellate court.  In reversing over fifty years of precedent by foreclosing appeals beyond the permissive sixty-day limit, the Court now invites collateral civilian appellate review in those cases where legitimate questions of service or constructive service are engaged, or where questions of IAC are alleged.

     With the doors to this Court now closed, appellants are
left with two possible avenues of appeal.  First, appellants
could petition the Judge Advocate General (TJAG) to appeal on
their behalf using the certification mechanism.  Among other
things, this would undermine the notion of independent civilian
oversight of the military justice system, as the TJAGs would
effectively serve as gatekeepers to this Court.  It would also
remove the "good cause" threshold from this Court's
consideration of petitions, but not for certified appeals
falling within this Court's mandatory review.  Further, there
are obvious bureaucratic incentives for the TJAGs, during a time
of operational demand and staffing constraints, to limit use of
this option if it were used at all.

     Second, and more likely, appellants will seek appellate
review through the habeas Article III process, including any
claims of IAC that might pertain to the failure to timely file a
petition.  This approach runs contrary to Congress's intent to
have a uniform application of the law through exercise of
unified appellate jurisdiction.  Indeed, there is not only a
risk of inconsistent service results, but also a risk of
inconsistent approaches to military law between appellate and
habeas jurisdictions.  This might occur, for example, where an
accused challenges the application of a new article in the UCMJ
or a change to the Rules for Courts-Martial, but finds this

courthouse closed on account of a "late" petition.  Good cause would otherwise be shown to consider statutory and manual issues of first impression reaching across the services.  Also, consider that where an accused raises questions of first impression involving the application of constitutional law in military context, these questions will certainly be answered in the Article III context.  They should be, absent the opportunity to do so before this Court.

Fourth, Congress designed a deployable and flexible system of military justice with permanent courts in Washington and temporary trial courts in the field.  As a result, the military justice system is ill-suited to now address the predicate factual issues that will arise as this Court, the government, and appellants try to identify and demonstrate the moment at which this Court's jurisdiction did or did not expire.[2]  For example, consider the prospect that appellants and their counsel will now be compelled to factually contest issues of constructive service in order to demonstrate that they should

---

[2] This Court will also need to amend its rules.  C.A.A.F. R. 19(a)(3) states that "a petition for grant of review will be deemed to have been filed on the date when the petition has been mailed or delivered by an appellant or by counsel on behalf of an appellant directly to the Court."  However, if the sixty-day limit is jurisdictional and mandatory, it must have a definitive termination point.  Thus, it must either terminate on the date when a petition is mailed or it terminates on the date that the petition is received.  This Court cannot choose between the two when the sixty-day deadline is mandatory and jurisdictional.

16

have the opportunity for this Court to consider their petition. Putting aside the obvious point that judicial economy would be better served by having this Court consider whether there was good cause to grant a petition before litigating the facts, the military justice system is not well-suited to adjudicate the questions of jurisdictional fact that Congress avoided and this Court now creates. With no standing trial courts, this will presumably be done using the DuBay hearing mechanism. United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967). Alternatively, Courts of Criminal Appeals might use their factfinding authority, but if so, adverse rulings to an appellant will necessarily have to be appealed using Article III habeas petitions. Did Congress intend that constructive provisions of the UCMJ and ineffective assistance of appellate counsel claims for missing deadlines be adjudicated using the habeas mechanism?

Conclusion

Bowles did not decide that all statutes with timelines are prescriptive, mandatory, and jurisdictional. It decided that, where Congress specifically prescribed a jurisdictional timeline, the timeline was mandatory. Based on the plain language used in Article 67, UCMJ, and the context of the statute as a whole, it is clear Congress did not do so. As a result, Ponds, Byrd, and Tamez remain good law. Given

17

Congress's intended role for this Court, this Court should be last, and not first, to close the courtroom door to military appellants.